## DECEMBER TERM, 1843.

### Adam L. Bingaman *v.* R. C. Hyatt, *et al.*

A judgment in this State, of older date than the *registration* of a mortgage, though junior to its *execution*, will be a prior lien upon the land embraced in the mortgage.

A levy upon personal property sufficient to satisfy the judgment, is, while the levy subsists, a satisfaction of the judgment, and a sale of *other* property than that embraced in the levy, by another execution on the same judgment, while the first levy remains undisposed of, passes no title.

An order of a circuit court, quashing a forthcoming bond, at a term subsequent to the return term of the bond, is a mere nullity.

The execution of a statutory forthcoming bond, does not discharge the levy of the execution, under which it is taken ; that levy continues in full force until the bond is forfeited, and acquires the force and effect of a judgment.

An irregular forthcoming bond, incapable of forfeiture, being taken, does not discharge the levy of the execution, and upon the quashing such a bond, the original levy remains in full force.

Upon an execution issuing upon a judgment, a levy was made, and an illegal forthcoming bond was given, which was afterwards quashed ; another execution issued upon the original judgment, and property was sold under it ; *held,* that the purchaser acquired no title ; the judgment being in law satisfied by the first levy.

A mere stranger, without interest in the matters in controversy, has no right to question the validity of the title to the property, as between the other parties to the suit.

'If the description of land in a deed, though not certain in itself, points to anything which will give exact information of the locality and boundary of the premises, it is sufficient to charge a subsequent purchaser with notice.

A description in the following words : "lying and being in the county of Yazoo, and State of Mississippi, situate on Short Creek, about three miles from Manchester, in township eleven, range two, west, in sections eight, nine, ten, and fifteen, containing about two thousand acres ; " *held,* to be sufficient to affect future purchasers with notice.

*Quære.* Where a sheriff levies upon and sells more land than is necessary, to satisfy the execution, where the land is capable of division, is such a sale void ?

The bill in this case, was filed to foreclose a mortgage executed by one Jacob B. Warmack in his lifetime, on the 5th day of April, 1836, to the complainant, Adam L. Bingaman, but not recorded until the 26th of September, 1836, conveying to said complainant "certain land lying and being in the county of Yazoo and State of Mississippi, situate on Short Creek, about three miles from Manchester, in township eleven, range two, west, and in sections eight, nine, ten, fourteen, and fifteen, containing about two thousand acres," and

appurtenances, &c., and some sixteen slaves, to secure complainant as surety as joint accommodation drawer to a bill of exchange with said Jacob B. Warmack, for said Jacob B. Warmack in his lifetime, since deceased, in favor of one Thomas B. Poindexter, which bill was accepted by Buckner, Stanton, & Co., payable 12 months from date, dated 6th April, 1836, for $6000 ; which bill of exchange complainant Bingaman states that he took up and paid himself, but that it has been lost or destroyed.

King, Miller, & Co. obtained a judgment in Hinds Circuit Court against Jacob B. Warmack in his lifetime, on the 27th day of May, 1836, for $160, and costs of suit. Execution issued on this judgment and was bonded, after the death of said Jacob B. Warmack, by Martha Warmack, Phil. Hoff, and W. A. Elamee, giving their forthcoming bond, which was forfeited and returned 7th November, 1836. Execution issued on said forfeited forthcoming bond, and was returned "no property." Afterwards, on the —— day of June, A. D. 1841, at the June term of Hinds Circuit Court, 1841, the said forthcoming bond was, on motion, by the judgment of the Court quashed, as appears by the record of the judgment and proceedings of said Circuit Court in the case, which is made an exhibit to the defendant Hyatt's answer, and referred to as an exhibit in the answer of the defendant Banks.

The plaintiffs in this judgment, King, Miller, & Co., afterwards sued out a *scire facias* to revive the original judgment against Martha Taylor and Lewis L. Taylor, guardians of Letitia Warmack, minor, heir of said Jacob B. Warmack, deceased, and said Letitia Warmack, returnable to 3d Monday of June, 1841 ; on the return of which, to wit : on the 23d day of July, A. D. 1841, a judgment reviving said original judgment, and awarding execution against the heirs of said Jacob B. Warmack, was rendered by said Circuit Court of Hinds.

In pursuance of said judgment of revival, on the 26th July, 1841, an execution issued on said original judgment against said Lewis L. Taylor, and Martha, his wife, and Letitia Warmack, minor heir of Jacob B. Warmack, deceased.

A transcript of the original judgment, as revived, was filed in the Circuit Court Clerk's office of Yazoo county, on the 28th July, 1841.

The execution on the original judgment after revival was levied on the following lands, to wit : E. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ ; E. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ ; N. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$ in section 10 ; S. $\frac{1}{2}$ and W. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, and E. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ in section 11 ; and W. $\frac{1}{2}$ of S. W. $\frac{1}{4}$, and W. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, and N. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ in section 12 ; and W. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ of section 13 ; and N. $\frac{1}{2}$ of section 14 ; and E. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of section 15, all in township 11, range 2, west ; and the N. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$ of section 33, township 11, range 1, west ; and W. $\frac{1}{2}$ of N. E. $\frac{1}{4}$, and E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ of section 11, township 11, range 2, west — containing in all fifteen hundred and sixty $\frac{66}{100}$ acres, more or less, as the property of J. B. Warmack in his life-time, and now belonging to his heirs, which were sold at public sale by the coroner of Yazoo county (there being at that time no sheriff), and bought by Richard C. Hyatt, A. C. Clark, and Jane Banks, jointly.

The said coroner, by regular deed of conveyance conveyed these lands to the purchasers ; that is to say : one fourth of the said lands to the defendant Hyatt, and the remaining three fourths to said Clark and Banks in equal portions ; which deed was regularly acknowledged and recorded.

Clark afterwards, by deed duly executed, delivered, acknowledged, and recorded, conveyed her interest in the lands to the defendant Banks.

The complainant in his bill alleges, that the lands so levied on and sold by the coroner of Yazoo, are part and parcel of the lands conveyed to him in said mortgage, and that the original judgment of King, Miller, & Co. has been satisfied by the forfeiture of said forthcoming bond.

The answer of defendant Banks denies that the lands bought as above stated by said Hyatt, Clark, and herself, are described in said mortgage or are conveyed by said mortgage, and alleges that said mortgage is void as a conveyance of lands, from its ambiguity and uncertainty of description.

A transcript of the judgment on said forthcoming bond, reciting said original judgment, was filed in the Circuit Court Clerk's office of Yazoo county, on the —— day of June, 1841.

By agreement of counsel, to prevent the trouble and expense of

proof, the execution of the mortgage, the bill of exchange, its loss, and its nonpayment, are admitted : and the case was submitted to the Chancellor upon the pleadings and this agreement.

*Wilkinson* and *Miles*, for complainants.

The facts admitted leave the following questions to be determined : —

1. Was the judgment of King, Miller, & Co. a subsisting lien upon the land ?

We respectfully insist that it was not.     The abstract of the original judgment and proceedings, filed in Yazoo county, on the 18th of June, 1841, shows that a forthcoming bond had been given and forfeited on the first Monday of November, A. D. 1836.     That was subsequent to the time complainants' mortgage was filed for record.     This was all the notice the defendants had of the judgment, at the time of their purchase.     Of course, then, according to their then understanding, they purchased nothing but the equity of redemption.     That we are willing they shall have.

It is now insisted, however, that the forthcoming bond was void ; and that it has subsequently been quashed by the Hinds Court.     To the order of the Court, quashing the bond, we have simply to say, that it was void, for want of power in the Court to make it.     See 4 How. Rep. 363.     The motion to quash, in this case, was made long after the return term had passed.     And to that ground of defence which rests itself upon the voidness of the bond, we need only remark, that if that be the case, then the levy first made is, and was, at the time the land was sold, in full force ; and, upon principles familiar to every lawyer, was a *quasi* satisfaction of the judgment. No other levy could be made, until the first one made had, in some way, been disposed of.     5 How. Rep. 629.

2. Is the mortgage void, for vagueness and ambiguity in describing the land ?     It certainly is not, and the authorities cited by defendants' counsel sustain us in this position.

That a conveyance of land may be void, for vagueness and ambiguity, no one will doubt.     But in order to make it void, the description must be so vague, as to preclude the possibility of identifying the land intended to be conveyed by parol evidence, or other

means.' Now, it surely cannot be contended, that when the county in which the land is situated is named, and the particular sections and township are numbered and designated in the conveyance, that the deed is void for ambiguity! Why, is not such a conveyance nearly as explicit as language can make it? What more would any surveyor want, than the description in the mortgage in this case, by which to make a survey?

A decree of foreclosure is asked, and confidently expected.

*Battaile, Montgomery,* and *Boyd,* for defendants.

The lands conveyed in the mortgage from Jacob B. Warmack in his lifetime to the complainant, if any are conveyed by it, are described, if described at all, as " certain land lying and being in the county of Yazoo and State of Mississippi, situate on Short Creek, about three miles of Manchester, in township eleven, range two, west, and in sections eight, nine, ten, fourteen, and fifteen, containing about two thousand acres," &c. Admitting, for the sake of the argument, that the complainant's mortgage is a valid and subsisting incumbrance upon the lands in controversy, the sale by the coroner of Yazoo to Hyatt, Clark, and Banks, was certainly legal and regular, and vested a good title in them to the equity of redemption in the lands in controversy, sold by said coroner under the execution on the judgment of *King, Miller, & Co.* v. *Jacob B. Warmack's* heirs, and by him regularly conveyed to the purchasers, Hyatt, Clark, and Banks. The objection to the title of defendants in complainant's bill, upon the ground of the forthcoming bond's being a satisfaction of the original judgment under which, as revived, the said Hyatt, Clark, and Banks bought, falls to the ground, since the fact is disclosed in the record of the judgment and proceedings thereupon, a certified transcript of which is filed as exhibit, and made by defendant Hyatt a part of his answer, as also by defendant Banks a part of her answer, and alleged by said defendant Banks in her answer as amended, that said forthcoming bond was, on motion by the judgment of Hinds Circuit Court, quashed : thereby leaving the original judgment in full force and unsatisfied at the time of its revival and of said sale. The transcript of the judgment on the forthcoming bond, reciting the original judgment, filed in the

Circuit Court clerk's office of Yazoo county before the 1st day of July, 1841, as required by the act of 1841 with regard to the liens of judgments, continued the lien of said original judgment from its date, May, 1836, long before the record of said mortgage, up to the time of sale. The doctrine that a levy of an execution, on sufficient personal property, is a satisfaction, does not apply to this case, because the forthcoming bond is illegal and void ; of course, the execution which emanated on it was illegal and void ; and the levy of the execution on the original judgment on sufficient personal property, was not, in this case, a satisfaction, because the levy was disposed of in due course of law, unless the defendants in the judgment are to be allowed to take advantage of their own wrong, to wit, the giving of an illegal and insufficient forthcoming bond, a principle which this Court will not tolerate ; and because the property levied on was restored on the giving of the forthcoming bond. But even if the original judgment was satisfied, if the purchasers at the coroner's sale had no notice of that fact, the sale was valid, and Hyatt, Clark, and Banks were *bonâ fide* purchasers. See 3 How. R. p. 69 ; 1 Cow. 622.

The mortgage purports to convey land to the amount or quantity of 2000 acres, in five different sections, viz. eight, nine, ten, fourteen and fifteen. The coroner's deed purports to convey $1560\frac{66}{100}$ acres. A section contains 640 acres, and five sections 3200 acres. So that Warmack might have mortgaged 2000 acres in the said sections, and yet have had 1200 acres in the same sections unincumbered. And if the mortgagee gets 2000 acres out of the five sections, what right has he to claim the remaining 1200 acres, which have been levied on and sold by the coroner to Hyatt, Clark, and Banks. The mortgage does not call for any particularly designated 2000 acres, out of the 3200 acres contained in the five sections. There is no proof but that Warmack, in his lifetime, owned the whole five sections, and died seised of the same. It is, that the bill alleges, that the land conveyed by the coroner to Hyatt, Clark, and Banks, is part of the land conveyed in the mortgage ; but there are no calls in the mortgage or description of premises, or other proof, to prove this.

His Honor the Chancellor will also observe, that the greater part

of the land, described in the coroner's deed to Hyatt, Clark, and Banks, lies in sections eleven, twelve, thirteen, and thirty-three; different sections from those named in said mortgage, which are sections eight, nine, ten, fourteen, and fifteen. Of course, even if a decree of foreclosure is made, it cannot embrace any land, but such as is in the last-named sections.

But it is utterly denied by defendants, that the mortgage is a valid and subsisting incumbrance. The defendants farther contend, that they have a clear legal and equitable title, also, to such lands described in the coroner's deed, as lie in the sections named in the mortgage, not only as purchasers under a judgment of older date than that of the record of the mortgage, but, they allege, because said land is not legally described or conveyed by said mortgage ; for the reason, that said mortgage is void as a conveyance of lands, from its ambiguity and uncertainty of description. In deeds or grants, there must be a certain description of the lands or thing granted. 1 Tomlin's Law Dict., Title *Description*, p. 551 ; 1 Sheppard's Touchstone, 245 to 251 ; 3 How. R. 231 ; 18 John. Rep. 107 ; 4 Kent, 466, 467 ; 5 Wheat. 359.

A patent or apparent ambiguity cannot be explained by parol evidence. 2 Stark. Ev. 546, 547.

A patent ambiguity renders the deed void.

There is, undoubtedly, a patent ambiguity in this mortgage, which no construction can cure ; and, therefore, we say it is void. 1 Sug. on Ven. (2 vols. in one), p. 183.

Even, however, if the mortgage is not thought to be void, it is insisted, that the vagueness, ambiguity, and insufficiency of description of what lands were intended to be granted, are too great to entitle the mortgagee to the legal priority or equity resulting from the constructive notice of registry against *bonâ fide* subsequent purchasers for valuable consideration.

The registry of a mortgage is said to be notice to subsequent purchasers. 1 John. Ch. R. 298. But notice of a deed is only notice of its contents. 2 Powell on Mortgages, 563, Notes F and 1. And if those contents are not of legal sufficiency, there is not such notice as either equity or the statute requires. Implied notice of a title conveyed, must not only be probable, but necessary and unques-

tionable inference from the contents of the conveyance itself.    A notice, merely to put the party on inquiry, is not sufficient to break in upon the registry act. ⋅ 2 John. Ch. R. 182.    Equity gives no assistance against a purchaser for a valuable consideration without notice.    1 John. Ch. R. 300.    The ground on which a purchaser is postponed in equity is, that the taking the legal estate after notice of a prior purchase or equity, makes the party a *mala-fide* purchaser, and amounts to a fraud.    " In order to fix the fraud, however, the proof of notice must be clear ; if it be merely doubtful, a presumption of fraud will not take place."    6 Munf. R. 42 ; 1 Story's Eq. 390, 391, 392.

An unauthorized registry is not notice.    18 John. R. 544.

The registry of a deed, defectively proved or acknowledged, is not constructive notice to a subsequent purchaser.    2 Binney, 40 ; 2 Root, 338.

The registry of a mortgage is notice only to the extent of the sum specified in the registry.    1 John. Ch. R. 297 ; 7 Id. 14.

CHANCELLOR.    This is a bill to foreclose a mortgage, given by one Jacob B. Warmack, now deceased, to the complainant, dated the 8th of April, 1836, conveying certain lands in the county of Yazoo, by way of indemnity, against the liability which the complainant had incurred, as the accommodation indorser of Warmack, on a certain bill of exchange.    The bill alleges, and the agreement of counsel admits, that the bill of exchange was taken up and paid by the complainant ; and thus his right to a foreclosure, as against the mortgagor, became complete and perfect.    The defendants, however, set up claim to the mortgage premises, as purchasers, under a judgment rendered against the mortgagor, after the date of the mortgage, but before the same was recorded.    By the statutes of this State, a judgment is a lien upon the property, both real and personal of the defendant, from its date ; but a mortgage takes effect only, as against creditors, from the date of its registration.    The judgment, under which the defendants claim, being of older date than the registration of the mortgage, must of course overreach it, unless by the subsequent proceedings under that judgment its lien became extinguished and discharged.    It

appears that an execution of *fieri facias*, of older date than the one under which the defendants purchased, had been sued out and levied upon personal property, sufficient to satisfy the amount of the judgment. A forthcoming bond was thereupon given, which was afterwards returned " forfeited," according to the provisions of the statute upon that subject. An execution issued upon this bond, which was superseded ; and at a *subsequent* term of the Court, from which it issued, both the execution and bond were quashed and set aside. A new execution was then issued on the original judgments, under which the defendants purchased the land in controversy. Whether the prior proceedings had the effect of discharging the lien of the judgment, or of restoring it to its original vigor, is the main point for decision. I much doubt whether the order of the Circuit Court, quashing the forthcoming bond, is not to be regarded as a mere nullity. The term of the Court at which the bond became a judgment, by operation of the statute, having elapsed, that Court had not, I apprehend, any more power to revise or set aside that judgment, than it would have had to set aside its own judgment, formally rendered at a preceding term. This is the view which I infer the Supreme Court took of the question, in the case of *Wanser* v. *Barker* (4 How. Rep. 363), when it declared that a motion to quash a forthcoming bond could not be entertained, after the term at which it became forfeited had elapsed. If then the order of the Circuit Court, in quashing the bond is void, as being *coram non judice*, the result is, that that bond is still in force ; and according to the uniform decisions in this State, it operated an extinguishment of the original judgment, from the moment the forfeiture took place ; and, as a consequence, gave priority to the mortgage, which was registered before the date of such forfeiture. But whether this view of the case be correct or not, still I apprehend that the original judgment itself must, in law, be regarded as satisfied, at the time of the sale under it to the defendants. A levy upon personal property, sufficient to satisfy the judgment, appears to have been made on a prior execution, and a bond given for its delivery on the day of sale. If then it be true, as urged by the defendants, that this bond was rightfully quashed as a mere nullity, the case would stand as though no such

bond had ever been given, leaving the levy under the execution in full force, and the property liable to be seized and sold under a *venditioni exponas.* The levy of an execution is not discharged even by taking a regular statutory bond, as is evidenced by the very terms and conditions of such bond. The levy continues in force until the bond is forfeited, and has "the force and effect of a judgment;" and if an *irregular* bond, or one not in conformity with the statute, be taken, it is clear that it could never have "the force and effect of a judgment," and therefore that the event could never happen, upon which the levy becomes discharged. In such case, the plaintiff in the original judgment would have a right to regard the levy as still subsisting, and to call for a *venditioni exponas* to enforce it. The sheriff has no authority to take any other bond, than that prescribed by the statute, and if he does, the plaintiff in execution is not bound by it. A levy once made, must remain in force, until legally discharged; an illegal bond could not have that effect. From this view of the case, it appears that at the time when the mortgage was registered, and at the time when the defendants purchased the land, under the judgment against the mortgagor, there was still subsisting and undisposed of, a prior levy on sufficient personal property, to satisfy that judgment. This levy, upon well settled and familiar principles of law, operated an extinguishment of the judgment. From the moment it was made, the *general* lien of the judgment ceased to operate upon the other property of the defendant in the execution, and attached specifically upon the property levied on. (*Ex parte Lawrence,* 4 Cow. R. 417.)

The case of *Jackson* v. *Bowen* and *Neff* (7 Cow. R. 13) is strikingly analogous in its features to the one before me. It was a contest between a purchaser under a mortgage with power of sale, and a purchaser under a judgment against the mortgagor. It was urged that the private sale under the mortgage was void, because that form of foreclosure is not authorized by the laws of New York, where there is a junior incumbrance, and that the judgment under which the plaintiff claimed was in force at the time of such sale. It appeared, however, that at the time of the sale under the mortgage, a levy had been made under the judgment on personal property sufficient to discharge it; but the plaintiff in execution

had ordered it to be returned unsatisfied, and afterwards sued out another, and levied it on, and sold the land, previously sold under the mortgage. The Court held, that no title passed under this sale; that the prior levy was an extinguishment of the judgment; and that it ceased to be a lien upon the land from the moment such levy was made. The principles of that case are, I think, conclusive upon the present question. It is clear that the defendants, in order to support their title, must show that the judgment, under which they derive it, retained a lien upon the land at the date of their purchase, older than the lien created by the complainant's mortgage ; because, at the time of the sale, they had full notice of that mortgage, and can only protect themselves against it, by showing that the prior lien of the judgment was still subsisting. It is indeed in this particular, a mere contest about the priority of liens ; and not a question of whether a purchaser at execution sale is effected by any irregularity in the proceedings. This view of the case would seem to supersede the necessity of noticing the other ground of defence ; because, if the defendants acquired no title under their purchase, they have no right as mere strangers, without interest in the matter, to question the validity of the complainant's mortgage, upon the score of ambiguity, or uncertainty in the description of the mortgage property. If, however, they were at liberty to raise that question, I am satisfied, although the property is somewhat generally and indefinitely described, that the vagueness in this particular, is not so great as to render the mortgage absolutely void for uncertainty. It would, therefore, resolve itself into a mere question, whether the description is sufficient to convey notice to a subsequent purchaser of the identity of the property intended to be conveyed ; because, whether the judgment, through which the defendants derive title, takes precedence in date to the mortgage or not, yet, if the judgment was in *force*, and the mortgage gives no cognizable description of the property, the defendants would be entitled to protection against it, as *bonâ fide* purchasers without notice. Is the description sufficiently certain to warn future purchasers as to the identity and locality of the land intended to be conveyed ? The land is described as " lying and being in the county of Yazoo, and State of Mississippi, situate

Bingaman *v.* Hyatt, et al.

on Short Creek, about three miles from Manchester, in township eleven, range two, west; in sections eight, nine, ten, and fifteen, containing about two thousand acres.

I cannot doubt that this description is sufficient to point the inquirer to the precise locality of the land. The county, township, range, watercourse, and sections on and in which it is situated, are precisely and particularly described. There is no attempt to show that the mortgagor owned more land in that township, and in those sections, than the two thousand acres conveyed to the complainant. A reference to the register of deeds, or the land office, would readily have shown what parts of those sections were covered by the conveyance. The rule is, that although the description may not be certain in itself, yet if it points to anything which will give exact information of the locality and boundary of the premises, it is sufficient to charge a subsequent purchaser with notice. In the late case of *Malden* and *Parker* v. *Hughes*, I had occasion to examine this question, and the principles there laid down are applicable to this case. One of the most striking features about this case, is the fact, that, under an execution calling for but one hundred and sixty dollars, and the accruing interest, a levy and sale was made of nearly sixteen hundred acres of land, consisting of various subdivisions. This levy was excessive, as is shown by the fact, that the land brought more money than was called for by the execution. In the case of *Stover* v. *Boswell's* heirs (3 Dana's Rep. 235), the Supreme Court of Kentucky held, that a sheriff, who levies upon and sells more land than is necessary to satisfy the execution, exceeds his authority, and that such a sale is void; especially where the land was susceptible of division. Without giving any decided opinion upon this point, I am satisfied, upon the other grounds which I have examined, that the complainant is entitled to enforce his mortgage against the land, in opposition to the claim of the defendants.

I shall, accordingly, direct the case to be referred, to ascertain the amount due on the mortgage; and, on the coming in of the report, a decree of foreclosure may be had.