## Jesse M. Scruggs et al. *v.* Jas. D. Blair.

1. CHANCERY—ATTACHMENT—BASIS AND EXTENT OF JURISDICTION.—The basis of chancery jurisdiction is purely statutory, and depends on the condition of facts stated in the statute, to-wit: The absence of the debtor and the presence here of effects belonging to, or a debt due to him or third person, his having lands or tenements in this state."

2. CHANCERY—LAW OF ATTACHMENT—INTERPRETATION.—Our statute of June 7th, 1822, continued in the revision of 1857, arts. 60, 61, 62, 53, p. 549, embodies the essential features of the Virginia Acts of 1744 and 1819, and should receive the same interpretation which the Virginia courts have placed on the original.

3. CHANCERY—ATTACHMENT—JURISDICTION.—The complainant is required to do no more to sustain his bill for this relief than to bring himself as creditor within the terms of the statute; he need show no independent equity.

4. CHANCERY—ATTACHMENT—CASE.—R., B., W., and C. are makers of a note; D. B. and J. B. are indorsers, demand and notice being waived. R. is dead, W. a resident without property, B. and C. and D. D. & J. B. are non-residents, the two latter being a partnership owning land property in this state. The holders of the note file a bill praying the equitable writ of attachment. *Held:* The complainants might rest their bill on the terms of the statute without invoking any special equity in aid of the jurisdiction.

5. CHANCERY—PARTNERSHIP PROPERTY.—Land purchased with the partnership effects and held in the partnership name, a court of equity would regard as assets for creditors to the same extent as personal effects. So far as necessary, the residue would immediately resume its quality as real estate.

6. CHANCERY—EQUITY TO ADMINISTER ON PARTNERSHIP EFFECTS.—The law is incompetent to administer a partnership estate in favor of creditors; complete reliefs can only be meted out in chancery.

Appeal from the chancery court of Marshall county. STEARNS, J.

The facts appear in the opinion of the court.

Assignment of error:

The court below erred in sustaining the demurrer and dismissing the complainant's bill.

*Walter & Scruggs,* for appellants.

We insist that the remedy of appellants is in a court of

chancery; by this remedy alone can the interest of the heirs of A. J. Rugby in this property be subjected to the payment of the debts of appellants.

Real estate purchased with the funds of a partnership and the title taken in the name of the firm, will he held in equity, subject to partnership debts, but in all other respects as at law, the partners are joint tenants. Collier on Part., 133, 135; 10 Leigh., 406; Divine v. Mitchum, 4 B. Monroe, 489; Hewett v. Sturdevant, 4 B. Monroe, 459; Parson on Part., 366, notes; ib., 371; Story on Part., 153, 156, 157; Collier on Part., 123, 125.

In Comstock v. Rayford, 1 S. & M., 441, 442, the court decided that our statute being an exact copy of the Virginia statute, the construction given to the statute by the courts of Virginia, will be given here. The proceedings had in this case to conform exactly to those had in similar cases in Virginia. 2 Robeson's Prac., 200; 2 Leigh., 310.

*Featherston, Harris, & Watson,* for appellees.

The bill shows no equity on its face; the complainants have a remedy at law, full, ample, and complete, and as a necessary consequence, a court of chancery has no jurisdiction of the case presented by the bill. Also, the case presented is not one in which a court of law and a court of chancery could have concurrent jurisdiction. Freeman v. Stewart et al., 41 Miss., 139, 140, 141, 142, cited and commented upon.

Is not the remedy at law, then, full, ample, and complete in this case? Can the creditor get anything more than all of the property of the firm, and all of the separate property of each member of the firm? This, we see, can be done by an action at law.

But, A. J. Rugby, one of the firm of Rugby, Blair & Co., died in Louisiana, and had neither an executor nor an administrator in this state. Our answer to this is, that Rugby had property in this state—an interest in the land seized under the bill of complainants in this case, and the complainants

could have had an administration on his estate, at any time.

Again, we may be told that, whilst in a court of equity, land bought by a firm with the means of the firm, in the course of trade, will be regarded as assets of the firm, and treated as personal property until the debts of the firm are paid, and the accounts between the partners are adjusted and settled, that this doctrine will not be enforced in a court of law. Collier on Partnerships, § 135; 2 Story Eq. Jur., § 1207; 1 Caldwell, 444. That upon the death of A. J. Rugby, his interest in the land seized in this case, vested *co-instanti* in his heirs, and that they could not be divested of that interest by a sale of the land under a judgment obtained against his administrator and his heirs after his death. Treadwell v. Verndon, 41 Miss., 47, 48. This position may be easily answered. The bill of complainants was filed in August, 1868, and at that time, our probate courts were in existence and exercising all of their powers under the old constitution. The complainants should, therefore, have had an administration on Rugby's estate, and then have gone into the probate court of the county in which the land lies, and obtained an order for the sale of Rugby's interest in the land. In this way, and in that court only, could the heirs of Rugby have been divested legally of their interest in the land. This was not done. Since the filing of the bill of the complainants, the probate courts have been abolished, and their jurisdiction has been conferred on the chancery courts. This, however, does not aid the complainants in the least. This case must be determined by the law and the facts as they existed at the time the bill was filed. Subsequent changes do not change the original status of the case. 31 Miss., 459.

The case of Echols v. Hammond et al., decided by this court, is in all respects like this. The bill in that case, was filed against a non-resident debtor who had property in this state in the hands of a citizen. The complainant in that case, was a citizen of this state, and so are the complainants in this case. The bill in that case was filed under a law in all respects like the one in our Code of 1857, regulating attach-

ments in chancery, under which the bill in this case was filed. The court say in that case, that the demand was a legal one, and before equity will take jurisdiction, there must be a clear right and an adequate remedy at law. They decided in that case, that the creditor had an adequate remedy at law, by suing out an attachment against his debtor as a non-resident of this state. Echols v. Hammond et al., 31 Miss., 177. We insist that an attachment at law against these defendants, was the proper remedy in this case. Code, 372.

Courts of chancery must be confined strictly within the limits of their jurisdiction, and never should they be permitted to go beyond their limits, when the remedy is ample and complete at law. The right of trial by jury should be held inviolate by the courts, and the citizen should never be deprived of it in any case, in which he is entitled to it. Parker v. Winnipisseogee Lake Cotton Company, 2 Black., S. C. Rep., 550, 551; Hipp et al. v. Babin, 19 How., ib., 278; 1 Daniel, Ch. Pr., 574; Story's Eq. Pl., §§ 472, 473; 2 Abbott's Nat. Dig., 242, 243.

The question here is, can a creditor living in this state, go into a court of chancery, making an equitable attachment his leading process, and seize the property of his debtor lying within this state, simply on the ground that his debtor is a non-resident of the state.

Simrall, J.:

The bill is brought against Jas. D. Blair and Jno. J. Blair, resident citizens of the state of Louisiana, and the unknown heirs of A. J. Rugby, and W. J. Britton, W. T. Withers, and Lloyd R. Coleman, non-residents, except W. T. Withers, who resides in Hinds county, Miss., and alleges that on the 4th of January, 1859, Rugby, Jno. A. and Jas. D. Blair, partners, under the firm name and style of Rugby, Blair & Co., doing business in New Orleans, La., purchased, with the partnership assets, a parcel of land in Holly Springs, in this state, set out in the bill, for which a deed was taken in the partnership name; that after this, the firm name, though consisting of the same persons as members, was changed to A. J.

Rugby & Co.; that on the 19th of January, 1862, Messrs. Coleman, Britton & Withers made and delivered to A. J. Rugby & Co., their prommissory note, dated at New Orleans, four monthis after date, for $6,436 00; which note was by Coleman, Britton & Co., indorsed to the complainants, demand and notice being waived. A. J. Rugby & Co. are insolvent, and have no other property; nor has either of them, except the parcel of land aforesaid. Coleman, Britton & Withers have no property in this state, nor has either of them.

That on account of the death of Rugby, and the non-residence of the defendants, they cannot recover at law.

Prayer is for an equitable writ of attachment, and for decree for sale of the land.

The question is whether the complainants have a remedy in a court of chancery. It is quite evident that a creditor cannot proceed by attachment in equity to make his debt out of the effects or credits or lands of a non-resident, absent, or absconding debtor, on the ordinary principles that obtain in that court. There must be some equity to put in motion this or similar remedial machinery, such as an unsatisfied judgment at law, and inability to appropriate a fund or assets by execution, which may be reached in chancery. Can the relief be granted by virtue of the statute? The proceedings authorized by the Rev. Code, art. 60, § 3, p. 549, against non-resident and absent debtors, was derived from Virginia statutes of 1744 and 1819. The former of these limited the remedy to cases " where the non-resident debtor had effects in the hands of a resident party, or a resident party indebted to the non-resident. " The enlargement made by the latter act, was in addition to the above, " or against every absent defendant having lands or tenements within this commonwealth. " There were two classes of cases in which the creditors could resort to a court of equity. The first was to reach the " effects " or " debts " in the hands of, or owing by the resident party. The second was to subject the lands of the non-resident or absent debtor.

Our statute of June 7th, 1822, continued in the revision of 1857, embodies the essential features of these two Virginia acts, and should receive the same interpretation which the Virginia courts have placed upon the original. The basis of the jurisdiction is purely statutory, and depends on the condition of facts stated in the statute, to-wit: The absence of the debtor; the presence here of effects belonging to, or a debt due to him; or, third, "his having lands or tenements in this state."

Comstock v. Rayford et al., 1 S. & M., 437, arose under the first branch of the statute, to subject property in the hands of the resident defendant to the debts of the absent defendant. It was held that before a creditor at large, without specific lien or judgment at law, could bring the bill, there must be, a resident, and non-resident or absent party defendant; an attachment was irregular, but a proper order for securing the fund should be made. Trotter v. White, 10 S. & M., 612, was much like the preceding case. Trotter, the absent debtor, owed a large sum to the plaintiff, and by means of a false and fraudulent sale, had passed large property into the possession of the home defendant; it was distinctly announced that the intimation, thrown out in Comstock v. Rayford, that a preliminary attachment might be awarded, was a proper remedial agency. Freeman v. Gwin, 11 S. & M., 62, was in all important particulars, like the former cases, except that the complainant creditor was a non-resident. The main contest was as to the jurisdiction. It was urged at the bar that the remedy was full and adequate at law, and that there was no element of equity in the bill. The response of the court to this, was that they were administering a statutory redress, and that in the state from which we derived the remedy, the courts had never required the creditor to ground his bill upon any special predicate of equity congnizance. The case of Zachariah & Kerr v. Bowers, 3 S. & M., 644, sought to subject the lands of the non-resident debtor, and was sustained as a proper bill. 33 Miss.

The difference which once existed in the court, as to whether

the complainant should show, in addition to the facts set forth in the statute, some independent equity, we regard as settled in favor of the opinion, that he is required to do no more than to bring himself, as creditor, within the terms of the statute. The decisions also meet the constitutional objection to the jurisdiction. The constitution of 1832 conferred full jurisdiction in all matters of equity, on the chancery court. These statutes were in force long before, and at the time of, the adoption of the constitution, and the convention must have had in view the equity system, as modified, or enlarged by legislation. Although there may be a concurrent remedy at law, and the creditor have a purely legal demand, nevertheless, there may be resort to the equitable remedy. The complainants might, therefore, rest their bill on the terms of the statute, without invoking any special equity as ground, or in aid of the jurisdiction. It not unfrequently occurs that a bill cannot be referred to any one of the heads of equity cognizance; and there may be, also, a remedy at law; yet, if that remedy be not adequate and unembarrassed, that of itself justifies a resort to chancery. The land in controversy is averred in the bill to have been purchased with the joint funds, and to be held in the joint name. This converts the real estate into equitable assets; so that in equity, it will be dealt with and disposed of as joint effects and credits. At law, however, the several partners are tenants in common. On the death of a member, his heirs hold in common with the survivors. A judgment against the survivors would only reach for purposes of satisfaction their interest. Upon a dissolution of the firm, by the death of one of its members, the credits and personal effects vest, by operation of law, in the survivors, and under judgment against them, the effects of the firm may be sold, and the credits garnisheed. The real estate, however, preserves its distinct qualities, and descends to the heir, who holds in common with the survivors, in trust, for the purposes of the partnership; first, for the benefit of creditors, and second, for the members of the firm and their representatives, accord-

ing to their several interests as fixed by the articles of co-partnership. A court of equity would regard, land bought and held as was this land, as assets for creditors, to the same extent as personal effects, so far as might be necessary; the residue would immediately resume its quality as real estate. The law is incompetent to administer this trust in favor of creditors. The survivor and the legal representatives of the deceased member may be sued together; but, under a judgment in such a suit, the interest of the decedent could not be made available for the creditor. Complete redress can only be meted out in chancery, when all the interests in the land can be brought before the court, and by one decree, the entire estate converted into money, for creditors. Unless this be done, the legal representative must, through the probate court, or the chancery court exerting that jurisdiction, sell the land of the decedent. The equity court, by one suit, delights to cover the entire ground, and comprehend and settle all conflicting rights in one decree, and thereby avoid the expense, delay, and multiplicity of suits. Dyer v. Clark, 5 Metc., 562; Galbraith v. Gage, 16 B. Monroe, 631; Buckley v. Buckley, 11 Barb., 43; Markham v. Merritt, 7 How., 444.

The decree of the chancellor, sustaining the demurrer and dismissing the bill is reversed, and decree here overruling the same, and leave given to plead or demur in forty days, with leave to chancellor to enlarge the time.