**M P I, INC., Plaintiff,**

v.

**Derwood McCULLOUGH, Carl L. Craig and John L. Dupré, Defendants.**

No. EC 78–226–K–P.

United States District Court,
N. D. Mississippi, E. D.

Dec. 14, 1978.

Michael S. Allred, Jackson, Miss., for plaintiff.

Armis Hawkins, Houston, Miss., Lester Sumners, New Albany, Miss., for defendants.

## MEMORANDUM OF DECISION

KEADY, Chief Judge.

In this case we are presented with the propriety of enjoining an attachment of realty under Mississippi chancery statutory procedure, Miss.Code Ann. § 11–31–1, et seq., invoked in a pending state chancery court action, upon the ground that the attachment procedure contravenes the Due Process Clause of the fourteenth amendment to the United States Constitution. We hold that the attachment procedure is unconstitutional, and that we, as a federal district court, have the power and authori-

ty, and should exercise it, to restrain the enforcement of the constitutionally impermissible procedure, but without otherwise interfering with the prosecution of the state court action.

Invoking federal court jurisdiction under 28 U.S.C. §§ 1331 and 1343, for a cause of action based upon 42 U.S.C. § 1983,[1] M P I, Inc. (M P I) plaintiff, a corporation organized under the laws of Texas, brings this action to redress what it asserts to be a deprivation under the color of state law of rights, privileges and immunities secured to it by the fourteenth amendment which guarantees against the taking of private property without due process of law. The defendants are Derwood McCullough, Chancery Clerk of the First Judicial District of Chickasaw County, Carl L. Craig, the duly elected sheriff of Chickasaw County, and John L. Dupré, the attaching creditor who is a citizen of the State of Texas.

On November 17, 1978, Dupré, as complainant in a state chancery action, sued M P I as defendant in Cause No. 8126 of the Chancery Court of the First Judicial District of Chickasaw County. In that action, Dupré alleged that upon the termination of an employment agreement which he had with M P I (formerly known as Alleluia Cushion Co., Inc.) in an executive position, Dupré, by virtue of the terms of a written contract, was entitled to a bonus of $38,000 for a five-year period of time ending April 30, 1978, and that he was further entitled to have M P I issue to him 20,000 shares of M P I stock at $3.25 per share, which M P I was contractually obligated to repurchase at a higher book value figure under an arrangement for M P I to pay one-fourth of the cash difference immediately and the balance in three equal annual installments.[2] In addition, Dupré in his chancery action demanded interest, reasonable attorney fees

---

1. § 1983. Civil action for deprivation of rights.

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

   shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. The complaint in chancery court does not specify the present share book value of M P I's stock so that we are unable to state the total sum demanded by Dupré in his state action.

and all costs. Dupré alleged in his bill of complaint that M P I was a nonresident of the State of Mississippi owning certain real property located in the Town of Houston on which its manufacturing plant was situated, and invoked the Mississippi chancery attachment procedure. Simultaneously with the filing of the chancery action, the defendant McCullough issued a writ of attachment against the real property and handed it to the defendant Sheriff Craig who caused the writ to be executed by posting it upon plaintiff's real property at Houston, § 11–31–5, see n. 5, *infra,* and by filing with the chancery clerk notice of the levy, pursuant to § 11–47–5, see n. 7, *infra.* In addition, the writ of attachment was personally served upon an employee of M P I which was qualified to do business in Mississippi and had a resident agent for service of process.

On December 14, 1978, M P I applied to this court for a preliminary injunction restraining the defendant officials from issuing and serving the state chancery attachment, restraining Dupré from applying for any writ of attachment under the state chancery procedure, and enjoining Dupré from prosecuting his action for damages in the chancery court of Chickasaw County. In addition, M P I sought a declaratory judgment that the Mississippi chancery attachment procedure was unconstitutional and void, and that it was entitled to recover damages, attorney fees and expenses and costs from Dupré for having resorted to an unconstitutional taking of its property by suing out an attachment against its realty. At our hearing, the defendants resisted the granting of injunctive relief, and the parties advised the court that on the preceding day the issue of the constitutionality vel non of Mississippi's chancery attachment procedure had been raised in argument before the Honorable Woodrow W. Brand, Jr., Chancellor of the 14th Chancery Court District, which encompasses Chickasaw County, and that Chancellor Brand was awaiting action by this court before proceeding further. The next term of chancery court for the First Judicial District of Chickasaw County convenes the fourth Monday of February, 1979. It appeared from the state court file that M P I had filed a motion to dismiss the action for lack of venue, lack of jurisdiction and lack of any ground for relief. After receiving oral argument, this court made a bench ruling declaring the Mississippi chancery attachment procedure, on its face and as here applied, void and unconstitutional and issued an injunction to restrain and quash the attachment proceeding, but without otherwise interfering with the action for money and/or specific performance pending in the chancery court. Because of the importance of the issue, our remarks made at the conclusion of the hearing are withdrawn and this memorandum is substituted in lieu thereof.

### 1. The nature of Dupré's claim.

Dupré sues in state court for a particular sum of money and for specific performance of an employment contract which he made with M P I in the State of Texas and which was entirely performed outside the State of Mississippi. His suit thereon was a transitory cause of action which asserted breach of contract and had no connection whatever with M P I's real property at Houston, Mississippi, which was attached in chancery upon his application therefor. Located upon the attached real property is a plant which M P I operates for the manufacture of carpet padding and related products. At no time during his contract of employment was Dupré ever employed at M P I's Houston plant.

### 2. Mississippi's chancery attachment procedure.

The chancery attachment procedure was first enacted into Mississippi statutory law in 1821 as a part of the original Act creating the Superior Court of Chancery in the state. V. Griffith, Mississippi Chancery Practice § 483, at 488 (2d ed. 1950). Jurisdiction was lodged within the chancery court for any kind of claims, contractual, ex delicto or otherwise, against any nonresident debtor owning lands and tenements

within Mississippi.[3] It was early decided that nonresident complainants may invoke the attachment statute, *Comstock v. Rayford,* 1 Smedes & M. 423 (Miss.1843); *Freeman v. Guion,* 11 Smedes & M. 58 (Miss. 1848), and a foreign corporation, though qualified to do business within the state, was nevertheless a "nonresident" within the chancery statute, *Clark v. Louisville & N. R. R. Co.,* 158 Miss. 287, 130 So. 302 (1930), and it was immaterial to the validity of the attachment that personal judgment could be obtained against the "nonresident" foreign corporation having a resident agent for service of process. *Aetna Ins. Co. v. Robertson,* 126 Miss. 387, 88 So. 883 (1921). It was decided more than fifty years ago that a complainant seeking a chancery attachment is not required to give bond for issuance of the writ. *I. B. Rowell & Co. v. Sandifer,* 129 Miss. 167, 91 So. 899 (1922). Emphasizing that the basis of chancery attachment jurisdiction is *statutory* and a complainant's bill need not show an independent equity, *Scruggs v. Blair,* 44 Miss. 406 (1870); *Statham v. New York Life Ins. Co.,* 45 Miss. 581 (1871), and *T. H. & J. M. Allen & Co. v. Montgomery,* 48 Miss. 101 (1873), the supreme court has denominated the chancery attachment as primarily a proceeding in rem. *Mid-South Paving Co. v.*

*Trinidad Asphalt Mfg. Co.,* 197 Miss. 751, 21 So.2d 646, 649 (1945). Although the present case involves only real property, the procedure also contemplates the attachment of personalty, including choses in action. Section 11–31–3 provides that, upon the filing of a bill for an attachment, where the property to be attached consists of the effects or personal property of a nonresident debtor or of an indebtedness of a resident of this state owed to such nonresident, the summons upon the resident defendant shall be sufficient to "bind" such effects or indebtedness.[4] *Mid-South Paving, supra,* held the only duty of a resident garnishee-defendant in a chancery attachment of personalty, tangible or intangible, is to answer as to the facts and to deliver such property to the court, if the court finally so orders. Real estate is expressly covered by § 11–31–5, which provides that a writ of attachment shall be issued by the clerk of the chancery court and levied by the county sheriff "as such writs of law are required to be levied on land, and shall have like effect".[5] Seizure of attached real estate is achieved by compliance with the mandatory provisions of § 13–3–123, which provides that the county sheriff, by going upon the real estate attaches it at the suit of the plaintiff,[6]

**3.** The present day statute contains essentially the same provisions:

§ 11–31–1. Jurisdiction; debtors.

The chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any contract, express or implied, or arising ex delicto against any nonresident, absent or absconding debtor, who has lands and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such nonresident, absent or absconding debtor. The court shall give a decree in personam against such nonresident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance.

**4.** § 11–31–3. How effects or indebtedness bound.

When a bill shall be filed for an attachment of the effects of a nonresident, absent or absconding debtor in the hands of persons in this state, or of the indebtedness of the defendant in

this state to such nonresident, absent or absconding debtor, it shall be sufficient to bind such effects or indebtedness, that the summons for the defendant resident in this state shall have stated in or endorsed upon it the nature and object of the suit, and that it is to subject the effects in the hands of the resident defendant, and the indebtedness of such defendant to the non-resident, absent or absconding debtor, to the demand of the complainant; or, instead of such statement on the summons, a copy of the bill may be served with the summons, and bind the effects or indebtedness from the time of such service.

**5.** § 11–31–5. How land levied on.

If the land of the nonresident, absent or absconding debtor be the subject of such suit, a writ of attachment shall be issued, and shall be levied by the sheriff or other officer as such writs at law are required to be levied on land, and shall have like effect.

**6.** § 13–3–123. Levy of writs of execution and attachment—on land.

In case of a levy of an attachment on real estate in the occupancy of any person, the

and with § 11–47–5 which requires the sheriff to file with the clerk of the chancery court a notice of his levy.[7] Compliance with these two statutory provisions perfects seizure of attached real property. The property remains subject to the attachment unless and until the nonresident debtor may appear and give "satisfactory security for performing the decree, and thereby [discharging] the lien . . . ; but if such debtor fail to appear, or fail to give security, the court shall have power to make any necessary orders . . . ." § 11–31–9.[8] Where a decree is rendered without an appearance of the absent debtor, the chancery court, before proceeding to satisfy its decree, shall require the complainant to give security for the purpose of restoring the estate in the event the nonresident defendant shall appear and answer the bill within two years; and if the complainant shall not give security, the property "shall remain under the direction of the court . . . for such time, and shall be then disposed of

as the court may direct." § 11–31–11.[9] The foregoing statutes provide that the chancery court acquires in personam jurisdiction over the nonresident debtor if personal service is obtained upon him or if he enters an appearance, § 11–31–1; otherwise, the chancery decree may be satisfied against the nonresident debtor only to the extent of the attached property.

It is apparent that once the property has been attached, the nonresident debtor may dissolve the attachment only by posting a satisfactory bond to be approved by the court or chancellor in vacation, § 11–31–9. "The principal defendant [nonresident debtor] cannot discharge the attachment by challenging the validity of the attachment itself, even on grounds of procedural irregularity, excessiveness, or lack of merit of the underlying claim. By prevailing at the trial on the merits, the principal defendant [nonresident debtor] can obtain the release of the [attached property], but he cannot recover damages, interest or attorneys' fees

officer shall go to the house or upon the land of the defendant, and there declare that he attaches the same at the suit of the plaintiff, but if the land be unoccupied, or if the process be an execution, he may attach or levy upon the same by returning that he has attached or levied upon the land, describing it by numbers or otherwise properly, and, if the process be an attachment, stating that the land is unoccupied; and in all cases the return of the officer shall be conclusive of the facts stated therein, except on timely motion to quash.

7. § 11–47–5. Notice by officer levying on real estate.

When the sheriff, United States marshal, or other officer, shall levy upon real estate by virtue of any process, unless it be in execution upon a judgment which is duly enrolled in the county where the real estate is situated, he shall file with the clerk of the chancery court of each county in which the real estate, or any part thereof, is situated, a notice of the levy, containing the names of the parties to the proceedings, the kind of process, and a description of the real estate levied on. The clerk shall file, record and note upon the notice and record, as required in section 11–47–3.

8. § 11–31–9. Publication for defendant and his appearance.

The nonresident, absent or absconding debtor shall be made a party to such suit by publication of summons as in other cases, and may appear and plead, demur or answer, to the bill without giving security; but the lien of the

creditor upon the property attached shall not be affected thereby unless security be given. If such debtor appear, he may give satisfactory security for performing the decree, and thereby discharge the lien, the court, or chancellor in vacation, approving the security and making an order to that effect; but if such debtor fail to appear, or fail to give security, the court shall have power to make any necessary orders, and to require security, to restrain the defendants within this state from paying, conveying away, or secreting the debts by them owing, or the effects in their hands belonging to, the nonresident, absent or absconding defendant, and may order such debts to be paid, or such effects to be delivered to the complainant, on his giving security for the return thereof in such manner as the court may direct.

9. § 11–31–11. Complainant to give security after decree.

If a decree be rendered in such case without the appearance of the absent debtor, the court, before any proceedings to satisfy said decree, shall require the complainant to give security for abiding such further orders as may be made, for restoring of the estate or effects to the absent defendant, on his appearing and answering the bill within two years; and if the complainant shall not give such security, the effects shall remain under the direction of the court, in the hands of a receiver, or otherwise, for such time, and shall then be disposed of as the court may direct.

based on wrongful attachment unless he successfully institutes a separate action for malicious prosecution. *Burt v. Roberts,* 212 Miss. 576, 55 So.2d 164 (1951)." *Mississippi Chemical Corp. v. Chemical Constr. Corp.,* 444 F.Supp. 925, 932 (S.D.Miss.1977). In the cited case, United States Magistrate John M. Roper, in a scholarly opinion approved by United States District Judge Walter Nixon, stated

> Chemico [the nonresident debtor] had neither notice of plaintiff's intention unilaterally to invoke the Attachment in Chancery procedure nor the opportunity to contest the propriety of the attachments either before or after they were imposed. The plaintiff was not required to apply to any disinterested common neutral judicial officer in order to bind the attached sums, nor to demonstrate the probable validity of its underlying claims, nor even to make any particularized showing that attachments were needed either in order for this Court to acquire jurisdiction over Chemico or in order to prevent the removal of the attached funds from this jurisdiction. The Plaintiff was able to avail itself of the statutory machinery of Attachment in Chancery without the posting of any security, although Chemico can dissolve the attachments only by the posting of adequate security. Should the attachments ultimately be shown in this case after the trial on the merits to have been wrongfully or mistakenly issued, Chemico will have no statutory entitlement to damages, interest or attorneys' fees other than through a separate action for malicious prosecution.

444 F.Supp. at 932–933. *Mississippi Chemical Corp.* declared the Mississippi chancery attachment statute, as to the attached choses in action or indebtedness then under consideration, unconstitutional as violative of procedural due process upon the authority of *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601,

95 S.Ct. 719, 42 L.Ed.2d 751 (1975). From his study of the controlling case law, Magistrate Roper reached, correctly we think, the following conclusion:

> A comparison of the provisions of the Mississippi chancery statutes with the teachings of *Fuentes, supra, Mitchell, supra,* and *North Georgia Finishing, supra,* can lead to only one conclusion—the Mississippi attachment in chancery statutes are unconstitutional, both on their face and as applied herein.

444 F.Supp. at 936.

3. Contentions of the parties.

M P I analogizes those cases which hold unconstitutional either seizure of personal property or garnishment of indebtedness under the chancery statutes to cases involving attachment against real property, here, a manufacturing plant located at Houston, Mississippi; it asserts that its property has been unilaterally, at Dupré's whim, taken or otherwise burdened by legal process without prior notice, opportunity for a hearing or chance to present a defense, thus causing it to suffer irreparable injury. M P I seeks not only to quash the attachment against its real property as an unconstitutional denial of procedural due process but also to enjoin the entire chancery court action by claiming that neither venue nor jurisdiction resides in the Chancery Court of Chickasaw County once the attachment is quashed or held to be invalid. The defendants—Dupré, as well as the chancery clerk and sheriff—assert that the Supreme Court cases which have invalidated garnishment proceedings without prior notice or opportunity to be heard do not apply to an attachment of real property alone; that an attachment of land, even though it be improved real estate and the site of an active manufacturing plant, does not so burden the attached realty as to implicate the Due Process Clause of the fourteenth amendment. In addition to maintaining the constitutionality of the chancery attachment procedure as to real property, defendants urge that we, as a federal district court, should abstain, out of considerations of

comity and federalism, from interference with the pending state court action. Finally, defendants urge that the seizure of M P I's plant effected at Dupré's instance does not cause M P I to suffer any actual harm during the pendency of the attachment, so that the element of irreparable injury, an essential prerequisite to injunctive relief, is absent, and it would therefore be improper to issue a preliminary injunction.

## APPLICABLE LAW

### 1. Abstention is inappropriate.

■ Since this suit is brought pursuant to 42 U.S.C. § 1983, an "expressly authorized" exception to the federal anti-injunction statute,[10] *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), we need not be concerned with that statute's absolute ban on federal court injunctions against state court proceedings.[11] Nevertheless, we must address other considerations inherent in a case such as this where a district court is asked to enjoin any aspect of a pending state proceeding.

Since its decision in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court has increasingly emphasized the importance of such principles of equity, comity and federalism in the relationship between federal and state courts. *Younger*, of course, held that a federal court should not interfere with a pending state criminal prosecution absent a showing of not merely "irreparable injury," but that the threatened injury would be "great and immediate," or that the prosecution was brought in bad faith or for harass-

ment, or that the statute which forms the basis for the prosecution is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 401 U.S. at 53–54, 91 S.Ct. at 755. The *Younger* doctrine has been expanded to apply to declaratory judgment actions, *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); civil proceedings instituted by the state, "both in aid of and closely related to criminal statutes" of that state, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); contempt proceedings, "though which [a state] vindicates the regular operation of its judicial system," *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); and a suit by the state, accompanied by a writ of attachment, "brought to vindicate important state policies such as safeguarding the fiscal integrity of [the state's public assistance] programs." *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). In all of the above cases in which *Younger* has been held to apply to civil proceedings in a state court, however, the determining factor has been a finding by the court, that the state court proceedings were brought to vindicate an "important state policy" or to protect an "important state interest." [12]

A substantial state interest is, we think, clearly lacking in the case sub judice. The suit in the state chancery court is one between private parties, both citizens of Texas, in which the plaintiff Dupré seeks to

---

**10.** The statute provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

**11.** Nor is abstention proper in a § 1983 case merely because the federal court plaintiff might also assert his constitutional rights in the state forum; exhaustion of any available state remedies is therefore not required of a § 1983 plaintiff. *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492, 503 (1961); *Leonard v. City of Columbus*, 551 F.2d 974 (5 Cir. 1977), *adhered to*, 565 F.2d 957 (5 Cir. 1978)

(en banc), *petition for cert. filed*, 46 U.S.L.W. 3559 (U. S. Jan. 20, 1978) (No. 77–1032).

**12.** The Supreme Court has repeatedly declined to hold that *Younger* principles should be applied "to all civil litigation," see *Trainor v. Hernandez, supra*, 431 U.S. at 444 n. 8, 97 S.Ct. 1911; *Juidice v. Vail, supra*, 430 U.S. at 336, 97 S.Ct. 1211 n. 13; *Huffman v. Pursue, Ltd., supra*, 420 U.S. at 607, 95 S.Ct. 1200, and has instead proceeded on a case-by-case basis, carefully weighing in each case involving a requested injunction against a state civil proceeding the competing interests of the parties, the state and the federal courts.

recover money damages, as well as specific performance, for an alleged breach of an employment contract by his former employer, M P I, which operates a manufacturing plant in Chickasaw County, and is qualified to do business in the State of Mississippi with an agent for service of process. It is apparent that the private litigation is of a transitory nature, and not local, and that the state court plaintiff Dupré could bring his action in any forum where he might find M P I present. M P I is without doubt present in the State of Mississippi since it has qualified to do business and is doing business here as well as having a resident agent for service of process. We perceive the State of Mississippi to have absolutely no interest whatever in this action beyond affording a statutory mechanism, i. e., the chancery attachment, by which a plaintiff may seize or bind the property of a nonresident defendant without prior notice or opportunity for any kind of hearing. Consequently, the considerations underlying *Younger* and its progeny are not present here, and the principles of comity and federalism have little force when the state's interest is, at best, minimal, if it exists at all.[13]

In the present case, we accord proper deference to considerations of comity and federalism by refusing to interfere with the power and authority of the Chancery Court of Chickasaw County to decide the merits of the underlying claims of Dupré against M P I, including all questions of venue and jurisdiction. We reject the invitation of M P I to enjoin the entire state court proceeding, and intervene therein only to strike down the constitutional infirmities of the summary chancery attachment against M P I's realty; the writ of attachment is merely auxiliary to and wholly separable from the underlying controversy relating to damages due Dupré for M P I's alleged breach of contract.

2. The constitutionality of the chancery attachment procedure as applied to realty.

Any notion that the invalidity of prejudgment seizures of property as violative of procedural due process was limited to absolute necessities of life, e. g., the wages garnished in *Sniadach, supra,* or the welfare benefits terminated in *Kelly v. Goldberg, supra,* and did not extend to other types of property related to life's necessities, was effectively dispelled in *Fuentes* and reinforced in *North Georgia Finishing.* In *Fuentes,* a case involving seizures of household goods under invalid prejudgment replevin statutes of Florida and Pennsylvania, Mr. Justice Stewart, while acknowledging in his majority opinion that there may be many gradations in the importance or necessity of various consumer goods or other property, held

> But if the root principle of procedural due process is to be applied with objectivity, it cannot rest on such distinctions. The Fourteenth Amendment speaks of "property" generally. And, under our free-enterprise system, an individual's choices in the marketplace are respected, however unwise they may seem to someone else. It is not the business of a court adjudicating due process rights to make

---

**13.** Another concern, that the federal court's enjoining the state court proceeding would "foreclose the opportunity of the state court to construe the challenged statute in the face of the actual federal constitutional challenges that would also be pending for decision before it," *Trainor v. Hernandez, supra,* 431 U.S. at 445, 97 S.Ct. at 1919, lessens in importance when it is considered that the Mississippi Supreme Court was itself recently confronted with an appellate challenge to the constitutionality of the attachment in chancery procedure, declined to decide the issue and upheld the attachment. *Louisville & N. R. R. v. Hasty,* 360 So.2d 925, 926 (Miss.), *cert. denied,* —— U.S. ——, 99 S.Ct.

614, 58 L.Ed.2d 679 (1978). Interestingly enough, the due process constitutional issue was similarly avoided in 1930 by the Mississippi Court, *Clark v. Louisville & N. R. R. Co.,* 158 Miss. 287, 130 So. 302, 309. This later refusal by the state court to consider the question is particularly significant in light of a declaration, rendered eight months earlier, that the same statutes violate due process and are unconstitutional. See *Mississippi Chem. Corp., supra,* 444 F.Supp. at 938, cited with approval by the Fifth Circuit in *Johnson v. American Credit Co. of Georgia,* 581 F.2d 526, 534 n. 16 (holding Georgia's prejudgment attachment unconstitutional).

its own critical evaluation of those choices and protect only the ones that, by its own lights, are "necessary." (footnote omitted).

407 U.S. at 89, 92 S.Ct. at 1999.

In *North Georgia Finishing*, a case involving use of the Georgia prejudgment garnishment statute against a bank account, Mr. Justice White, writing for the Court, held the statute to be invalid. While Mr. Justice White acknowledged that the case before the Court dealt with the statute's application "in the commercial setting to a case involving parties of equal bargaining power," he nevertheless went on to declare, "[we] are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause." (Citing *Fuentes, supra*). 419 U.S. at 608, 95 S.Ct. at 723. Moreover, "[t]he Fourteenth Amendment's protection of 'property' . . . has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to 'any significant property interest,' *Boddie v. Connecticut*, 401 U.S. [371] at 379, 91 S.Ct. [780] at 786, 28 L.Ed.2d [113] at 119, including statutory entitlements." *Fuentes, supra*, 407 U.S. at 86, 92 S.Ct. at 1997.

The Supreme Court has given us specific guidance that there may exist "extraordinary situations" that justify postponing notice and hearing or opportunity for hearing without offending procedural due process, but emphasized that these situations must be "truly unusual." In its words,

> Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a governmental official responsible for determining, under the standards of a narrowly drawn stat-

ute, that it was necessary and justified in the particular instance. Thus, the Court has allowed summary seizure of property to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated goods. (footnotes omitted).

407 U.S. at 90–92, 92 S.Ct. at 1999–2000. Our court recognized this salutary principle in *Holladay v. Roberts*, 425 F.Supp. 61 (N.D. Miss.1977), by indicating that an independent, post-seizure judicial remedy under Mississippi law could satisfy the due process requirements of a pre-forfeiture meaningful hearing, where motor vehicles were seized by state revenue agents for violations of the state's alcohol beverage control law.

■ As we examine the Mississippi chancery statute, it is obvious that attachment may be invoked by any person against a nonresident without any showing of a particularized need, such as an immediate danger that the nonresident debtor will convey away, destroy or conceal the disputed property, or that satisfaction of the underlying claim is dependent upon seizure of the specific property because of an impending fraudulent transfer by the nonresident, depreciation or spoliation of property, or other special equity which the attaching plaintiff may have in the particular property seized, such as a constructive trust or wrongful conversion of assets. Manifestly, the statutory procedure is not limited to instances where seizure is "directly necessary to secure an important governmental or general public interest." Nor can it be asserted that in this case there was such a public or governmental interest, as securing jurisdiction over a res when no other means of acquiring jurisdiction exists, *see Fuentes, supra*, 407 U.S. at 91 n. 23, 92 S.Ct. 1983, or preserving the integrity of state controlled programs as in *Trainor, supra*. Next, the statutes are not aimed at meeting a special need for very prompt action, and Dupré fails to make a showing that prompt action

is necessary to preserve his rights. Finally, the Mississippi scheme for chancery attachment is neither initiated nor monitored by a responsible judicial officer of the state, but is invoked by a private party and carried out by the state's ministerial agents, the chancery clerk and county sheriff. The state is truly kept in the dark; and Dupré was the prime and sole movant for invoking the state's chancery attachment against M P I's real property. None of the elements which *Fuentes* listed as essential to support an "unusual situation" is either written into the statutes or is alleged to exist as to Dupré's claim. Instead, the Mississippi chancery statute can be invoked upon the sole condition that the alleged defendant debtor is a nonresident of the state; [14] no more need be alleged.

It is apparent, as Magistrate Roper pointed out in *Mississippi Chemical Corp.*, that the state law does not grant any opportunity to the nonresident debtor whose property has been attached to challenge the validity of the attachment itself on any ground of irregularity, excessiveness, or lack of necessity. The nonresident debtor is indeed given a *Hobson's* choice: (1) he can make bond satisfactory to the chancellor and obtain a release of the attached property, or (2) he can appear at the trial and win on the merits. In no other way is it possible under the state chancery attachment statutes, as they are presently drawn, for the nonresident to secure the release of his attached property. The Mississippi attachment mechanism is much like the Florida and Pennsylvania statutes struck down in *Fuentes,* where the court stated:

> The statutes, moreover, abdicate effective state control over state power. Private parties, serving their own private advantage, may unilaterally invoke state power to replevy goods from another.

---

14. We do not deal with the statutory words, "absent or absconding debtor," and pretermit any comment thereon, as M P I is neither absent nor absconding from this jurisdiction. To the contrary, M P I, though a foreign corporation, is subject to in personam jurisdiction by doing business in the state and having a resident agent for service of process. Moreover, any nonresident corporation which has expressly subjected itself to the state's in personam jurisdiction nevertheless remains subject to chancery attachment of its property within the state. §§ 79–1–19, –21, –23, –29 (foreign business corporations domesticated in the state remain "nonresidents," subject to chancery attachment, *Southern Motor Exp. Co. v. Magee Truck Lines,* 181 Miss. 223, 177 So. 653 (1937)); § 79–3–211 (any foreign business corporation which qualifies to do business in the state, but not desiring to domesticate, is likewise subject to chancery attachment though in personam jurisdiction may be gained by process served upon any agent of the foreign corporation found within the county where suit is brought, *Central Western Dev. Co. v. Lewis,* 142 Miss. 428, 107 So. 557 (1926)); and § 83–21–1(a), (b), (c), and (d) (any foreign insurance corporation admitted to do business in Mississippi, by filing with the State Commissioner of Insurance its charter, statement of financial condition, meeting specified financial requirements to do business, and designating some resident as agent for service of process other than the Commissioner of Insurance is subject to chancery attachment. *Aetna Life Ins. Co. v. Robertson, supra* ). These qualification statutes are, of course, quite distinct from the state's several long-arm statutes compelling the appointment of statutory agents for service of process sufficient to impose in personam jurisdiction, e. g., §§ 83–21–25, –29, –37, –39, –41 (unauthorized unadmitted insurance companies); § 13–3–57 (any nonresident person, firm, partnership or corporation not qualified to do business); and § 13–3–63 (nonresident motorists using the highway of this state); these latter statutes, of course, rest upon an entirely different footing since nonresident defendants in the latter group of cases have not expressly consented to the state's in personam jurisdiction. But as for the great number of foreign business corporations of every character which have either become domesticated in Mississippi or have qualified to do business here, it requires no more than cursory reflection to realize that the vast amount of property in Mississippi, both real and personal, owned by such corporations and other business entities is vulnerable to the same burden of attachment upon its realty as M P I has suffered, upon the mere application of any plaintiff, irrespective of his place of residence or the nature or amount of his claim and without necessity for showing any justification whatever for attachment in order that the satisfaction of his claim may be assured. The vulnerability of such property to the burden of attachment is cause for grave concern when we realize that it is subject, impermissibly, to attachment without notice or opportunity for hearing afforded to the property owner before or after the seizure, short of winning the case on the merits of the underlying claim.

No state official participates in the decision to seek a writ; no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The State acts largely in the dark. (footnote omitted).

407 U.S. at 93, 92 S.Ct. at 2001.

Mississippi's chancery procedure magnifies the potential harm that results from long delay before trial on the merits of the underlying claim. For example, in the case at bar, the county sheriff attached the real property on November 17, 1978, with summons made returnable before the Chickasaw Chancery Court on the fourth Monday of November, 1978, to plead, answer or demur to the bill of complaint. On the same day that the realty was attached, personal summons was had upon M P I's agent, thus requiring M P I to answer on or before November 27, the first day of the return term, Miss.Code Ann. § 11–5–17 (1972), with the case to become triable at the convening of the next regular term of the Chicasaw Chancery Court, or in this instance, the fourth Monday of February, 1979. In other words, no less than 100 days, by state law, must elapse before Dupré's underlying claim becomes triable on its merits, during which period of time M P I's realty is bound by the chancery attachment. Manifestly, a delay of this duration would fail to satisfy even the requirements for an early post-seizure hearing in those cases which could be said to be the "special circumstances" or "unusual situations" in which the Supreme Court has said that the right to prior notice and opportunity to be heard may necessarily be obviated.

We do not read *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), as undermining the due process requirements of *Fuentes* (1972) and *North Georgia Finishing* (1975). Instead, the majority in *North Georgia Finishing* distinguished *Mitchell*, a case in which the Louisiana sequestration statute was upheld since it expressly entitled the debtor to an imme-

diate hearing after seizure and to dissolution of the writ absent proof by the creditor of the grounds upon which the writ was issued. *North Georgia Finishing*, 419 U.S. at 607, 95 S.Ct. 719.

■ Defendants, however, urge with vigor that *Sniadach, Fuentes* and *North Georgia Finishing* involved the attachment of only personalty, tangible or otherwise, which caused the debtor to be deprived of the use and possession of the attached property during the period it was frozen by the attachment proceeding. Defendants seek to distinguish those cases by asserting that they involved a significant taking of such a nature as to implicate the due process clause, while an attachment upon realty is no deprivation of use or possession during the interval of the attachment. Defendants urge that, consequently, an attachment of real estate, which is left in the hands of the debtor who has the right to use and enjoy it until the chancery court orders otherwise, is not such a significant taking or burden as to be protected by the Due Process Clause and that, therefore, the Mississippi chancery statute is constitutional as to realty, even though it may be constitutionally infirm as to personalty. None of the decisions of the Supreme Court of the United States have involved attachments against real property beyond a summary affirmance of a three-judge district court in *Spielman-Fond, Inc. v. Hanson's, Inc.*, 379 F.Supp. 997 (D.Ariz. 1973), *aff'd*, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). Defendants urge a proposition with which we can scarcely disagree; namely, that a summary affirmance of a case within the appellate jurisdiction of the Supreme Court is a decision on the merits and is binding on inferior federal courts until the Supreme Court tells them that it is not, *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

*Spielman-Fond, Inc.*, which interpreted Arizona's statutes on mechanic's and materialmen's liens, is readily distinguishable from the instant case. First, the claim of the attaching party was for unpaid labor performed and materials supplied on plain-

tiffs' mobile home park, thus insuring a direct connection between the res and the underlying claim. Since the Arizona statute permitted the debtor to remain in physical possession of the property against which the mechanic's and materialmen's liens were filed, *Spielman-Fond, Inc.*, distinguished *Sniadach, Goldberg* and *Fuentes* on the ground that the garnishments there invalidated involved the physical taking of some form of personal property or at least depriving the debtor of the use and enjoyment of the property during the period that the attachment was outstanding. Secondly, *Spielman-Fond, Inc.* is distinguishable from the case sub judice in that the filing of a mechanic's lien against realty did nothing more than cloud the title. The court reasoned that while it could not be denied

> that the effect of such lien may make it difficult to alienate the property . . . [i]f the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction. Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate has not been harmed, and the difficulties which the lien creates may be ameliorated through the use of bonding or title insurance.

379 F.Supp. at 999.

The three-judge court in *Spielman-Fond, Inc.*, thus concluded that the filing of a mechanic's or materialmen's lien did not amount to a taking of a significant property interest and was not violative of the Due Process Clause for failing to provide for notice and hearing prior to the filing of the claim. The summary affirmance of *Spielman-Fond, Inc.* nevertheless was one basis upon which the Ninth Circuit, in the *Matter of Northwest Homes of Chehalis, Inc. v. Weyerhaeuser Co.*, 526 F.2d 505 (1975), upheld the attachment statute of the State of

Washington when Weyerhaeuser sued Northwest Homes for goods sold and delivered and procured an attachment against Northwest's real estate without prior notice or hearing. The Ninth Circuit also placed reliance upon *Mitchell v. W. T. Grant Co.*, pointing out that Washington, unlike Mississippi, "provides for an early hearing at which the creditor is required to demonstrate that the writ was properly and regularly issued." 526 F.2d at 507 (citing *North Georgia Finishing*).

Moreover, unlike Arizona's mechanic's and materialmen's lien statute,[15] Mississippi's chancery attachment mechanism appears to create more than a mere nonpossessory lien. Rather, the procedure brings the attached property, whether real or personal, into the chancery court's constructive possession, to be there held until the property is released by the owner's bond or the nonresident prevails upon the merits. True enough, § 11–31–9 speaks of a "discharge [of] the lien" upon bond made by the nonresident owner. The statutory interpretation, however, enunciated by the state supreme court is that, until such release is secured, "the property [remains] in custodia legis," *Hart v. Livermore Foundry and Mach. Co.*, 72 Miss. 809, 17 So. 769, 775 (1895). See V. Griffith, *supra*, § 487 at 495 n. 29. *Cf. Ryals v. Douglas*, 205 Miss. 695, 39 So.2d 311 (1949); *Slattery v. P. L. Renoudet Lumber Co.*, 125 Miss. 229, 87 So. 888 (1921). Indeed, the chancery procedure itself makes no distinction between the acquisition of a possessory lien where personal property is attached and the creation of a nonpossessory lien where only realty is attached. *Mid-South Paving, supra*, makes clear that the garnishee resident defendant who holds effects of or is indebted to the nonresident defendant, is under "no duty" except to hold the effects, or choses in action, of the nonresident debtor to abide the court's decree. In no case does the sheriff as the levying officer take actual possession of the attached res, irrespective

---

**15.** Mississippi makes claims of this character triable in circuit courts without delay. Five days' service upon the property owner before the return term of court brings the matter to issue. Miss. Code Ann. §§ 11–7–121, 13–3–11 (1972).

of whether it is land or personalty of any character. Additionally, by § 11–31–9, the attached property, realty or personalty, remains subject to such orders as the court may direct, unless the nonresident debtor should appear and make bond to obtain its release. It therefore appears that if the court orders a sale of the attached res, the property is exposed for public sale by the sheriff upon the strength of the levy upon original attachment, without necessity of further process, and when the sheriff conveys title to the res, the property passes to the purchaser free of any rights or equities held by third persons which may have intervened since the date of the original levy. *General Acceptance Corp. v. Holbrook*, 189 So.2d 923, 925–26 (Miss.1966); *Jones v. Jones*, 249 Miss. 322, 161 So.2d 640, 643–44 (1964); *Redus v. Wofford*, 4 Smedes & M, 579, 592 (Miss.1845).

Because of the radical differences between Mississippi's chancery procedure and the Arizona mechanic's and materialmen's statute, we do not feel bound by the Supreme Court's summary affirmance in *Spielman-Fond, Inc.* or that it is apposite here. We are reinforced in this conclusion by certain basic considerations enunciated in *Fuentes* and reaffirmed in *North Georgia Finishing*. First, *Fuentes* makes clear that "[t]he Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause." *Fuentes*, 407 U.S. at 86, 92 S.Ct. at 1997; *North Georgia Finishing*, 419 U.S. at 606, 95 S.Ct. 719. Next, *Fuentes* and *North Georgia Finishing* both negate the

notion that there is any type of private property which is beyond the protection of procedural due process. Most assuredly, the Supreme Court has never directly made an express statement that land, if attached, is outside the purview of the Due Process Clause. To the contrary, the consistent teachings of the Supreme Court cases are that *any significant taking* of property contravenes the Due Process Clause if the State does it without prior notice and opportunity for hearing, absent some unusual or special circumstance which reasonably justifies an early post-seizure hearing on the validity of the seizure.[16]

The concept that an attachment of realty, in itself, does not constitute a significant taking of property so as to implicate procedural due process has been rejected in numerous three-judge court cases which have struck down attachments against land without prior notice or opportunity for a hearing. We agree with their rationale that encumbering realty during the life of the attachment is a burden upon the right of alienation, interferes with the ability to obtain necessary financing for the enjoyment of the property, and creates a cloud upon the title and a reflection upon the owner's credit in the business community. This burden is compounded when, as here, the full extent of the plaintiff's demand is not ascertainable from his suit, and no justification is alleged or required to seize M P I's land, despite its value, nature and business use, to give assurance that plaintiff's claim, wholly unrelated to the seized property,[17] can be satisfied only if the attachment is maintained.

**16.** Mr. Justice Powell, concurring in *North Georgia Finishing*, succinctly stated the essential ingredients which an attachment or garnishment statute must contain in the ordinary, usual type of proceeding.

In my view, procedural due process would be satisfied where state law requires that the garnishment be preceded by the garnishor's provision of adequate security and by his establishment before a neutral officer of a factual basis of the need to resort to the remedy as a means of preventing removal or dissipation of assets required to satisfy the claim. Due process further requires that the

State afford an opportunity for a prompt postgarnishment judicial hearing in which the garnishor has the burden of showing probable cause to believe there is a need to continue the garnishment for a sufficient period of time to allow proof and satisfaction of the alleged debt. 419 U.S. at 611, 95 S.Ct. at 725.

**17.** We note, additionally, that this facet of the Mississippi scheme may be subject to attack on grounds of the due process "minimum contacts" requirements espoused in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

In *Gunter v. Merchants Warren National Bank*, 360 F.Supp. 1085 (D.Me.1973) (three-judge court), striking down the Maine attachment procedure of real property in civil actions, District Judge Gignoux made an excellent articulation:

A restriction on the power of a real estate owner to alienate his property is such a deprivation. A real estate attachment under Maine law, while not disturbing possession, creates a lien on the property, . . . and effectively deprives the owner of his ability to convey a clear title while the attachment remains outstanding. . . . As the record in the present cases discloses, substantial hardship to the defendant may result. It is thus beyond question that an attachment denies the defendant the unrestricted use of his property in a manner which "cannot be characterized as *de minimis.*" *Sniadach, supra*, 395 U.S. at 342, 89 S.Ct. at 1823 (Harlan, J., concurring). In light of the principles of due process enunciated in *Fuentes*, it cannot be said that the right of an owner of real estate to alienate his property is not a "significant property interest," the deprivation of which is within the Fourteenth Amendment's protection.

360 F.Supp. at 1090.

To the same effect is *Bay State Harness Horse R & B Ass'n v. PPG Indus., Inc.*, 365 F.Supp. 1299 (D.Mass.1973) (three-judge court), where the court held unconstitutional a Massachusetts statute authorizing the attachment of real estate at the instance of a creditor asserting breach of contract, since the state law did not provide for prior notice or opportunity for hearing. This court recognized that:

Attachment of real estate does not effect such an obvious deprivation of the property to the owner as does the action of replevin, where, as is shown in *Fuentes*, the officer takes custody of the personal property and holds it *pendente lite.* Nor does the real estate attachment work a deprivation to the owner of all use of the real estate as in the case of personal property held, as pointed out in *Schneider* [*Schneider v. Margossian*, 349

F.Supp. 741 (D.C.Mass.1972)], subject to the trustee process. Thus the owner may continue to enjoy the physical use of his real estate free from any restriction or control imposed by the attachment. Nevertheless, even viewing the attachment as a nonpossessory lien, or as merely an encumbrance or cloud on the title, the interest created by the attachment operates as a superior interest against subsequent purchasers, mortgagees or attaching creditors, and thus restricts the owner's ability to sell or mortgage the property at its full value. The determinative impact of the attachment is that it deprives the owner of a property right or interest significant not only to him in his use of the property but to the attaching party as well. (citations omitted).

365 F.Supp. at 1304–05.

Observing that *Fuentes* has obviated any need for a showing of hardship on the part of a property owner, the court concluded that "the Massachusetts attachment procedures applicable to real estate, when invoked, do effect deprivation of a significant property interest of the owner without notice or opportunity to be heard." 365 F.Supp. at 1306. *Contra, Central Sec. Nat'l Bank v. Royal Homes, Inc.*, 371 F.Supp. 476 (E.D.Mich.1974) (single judge court).

In *Clement v. Four North State St. Corp.*, 360 F.Supp. 933 (D.N.H.1973) (three-judge court), the court struck down New Hampshire's statute allowing individual litigants to obtain prejudgment attachments of real estate without first giving the owner of the property reasonable notice and an opportunity to be heard. *Clement* adopted *Gunter's* rationale which had invalidated Maine's realty attachment statute.

In *Terranova v. Avco Fin. Serv. of Barre, Inc.*, 396 F.Supp. 1402 (D.Vt.1975) (three-judge court), the court voided Vermont's attachment procedure which authorized attachment of realty without prior notice or hearing and without participation by a court or judge. The *Terranova* court addressed, and specifically rejected, a distinction sought to be drawn between attaching personalty and land:

To be sure, there is both a quantitative and qualitative difference between a possessory attachment which deprives an individual of *all* use of his property, and a real estate attachment which limits only specific uses of the property. But the legal significance of these distinctions is less clear. And as the Supreme Court said in *North Georgia Finishing, Inc., supra* [419 U.S. at 608, 95 S.Ct. 719,] "We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause."

Defendants argue that the differences between possessory and non-possessory attachments are such that the present case is not necessarily governed by the principles set down by the Supreme Court in *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra* (bank garnishment); *Fuentes v. Shevin, supra* (replevying of household goods); and *Sniadach v. Family Finance Corp., supra* (wage garnishment).

Even *Mitchell v. W. T. Grant Co., supra,* which upheld a state sequestration statute, is not directly relied upon by defendants because it too involved an actual *seizure* and taking into possession of property. With a real estate attachment, defendants maintain, there is really no property deprivation at all, no "taking," so to speak, because the landowner still has what is referred to as the "full use and occupancy of the property." Plaintiffs maintain that there is a significant property interest involved in a real estate attachment since it may adversely affect the landowner's credit rating, and in addition make it difficult or impossible for the landowner to sell or mortgage the property.

In deciding this threshold question, we cannot ignore the substantial economic effects which can result from the use of the real estate attachment in connection with the initiation of a suit. The attachment in question places a burden upon the real estate owner, a burden which is underscored by the fact that he must take affirmative action in court in order to dissolve the attachment. This, in addition to the fact that an attachment impairs the market value and marketability or mortgageability of the real estate cannot be viewed as "insignificant" deprivations in a constitutional sense. Notwithstanding the fact that such effects may be only temporary, they are nevertheless real. While the ownership of property cannot be simply defined nor its rights easily compartmentalized, consisting as it does of a collection of benefits, uses and duties, an attachment involves the curtailment of economically important property uses.

396 F.Supp. at 1406. (footnotes omitted).

■ We therefore hold that the chancery statute procedure as to the realty of a non-resident debtor (no less than the seizure of personalty) is violative of the Due Process Clause of the fourteenth amendment both facially (as the Mississippi statutes are presently written) and as applied to the facts of this particular case. Mindful that our ruling has significant implications to a heretofore largely unquestioned procedure, we limit the effect of our ruling today to the parties in the case at bar and to prospective enforcement of the attachment procedures at issue here. We take this course in order that the validity of all prior Mississippi real estate attachments, and titles derived thereunder, not be put in question.

3. A preliminary injunction is proper.

■ The Fifth Circuit's teaching as to what elements should be considered by a district court and established to its satisfaction, before granting the extraordinary remedy of a preliminary injunction is crystal clear:

A preliminary injunction is an extraordinary remedy, and the boundaries within which the district court must exercise its discretion are clearly marked. The court must find that the moving party has satisfied four prerequisites: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof

that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. The movant has the heavy burden of persuading the district court that all four elements are satisfied. *Canal Authority v. Callaway,* 489 F.2d 567 (5 Cir. 1974). (footnote omitted).

*Hardin v. Houston Chronicle Pub. Co.,* 572 F.2d 1106 (5 Cir. 1978).

In the case sub judice, the court is satisfied that M P I has carried the heavy burden of showing that these four elements are present. In our view there is substantial likelihood that M P I will eventually prevail as to the constitutional infirmity of the attachment against its realty. Next, M P I will suffer irreparable injury unless the injunction issues since the harm to be suffered by M P I is not capable of measurement in money damages and is of a nature for which there is inadequate recompense.[18] Thirdly, the evidence shows that the threatened injury to M P I outweighs whatever damage, if any, the opposing party may suffer from the injunction. Here, it is indisputably clear that M P I remains suable in the state courts of Mississippi, as a foreign corporation qualified to do business in this state. Lastly, it affirmatively appears that the issuance of a preliminary injunction would not be adverse to the public interest. Instead, the true public interest would appear to lie in the maintenance of constitutionally permissible judicial remedies.

Let an order be entered accordingly.

---

18. An injury is irreparable when it cannot adequately be compensated in damages or where there exists no certain pecuniary standard for the measurement of the damages. Where the extent of the prospective injury is uncertain or doubtful so that it is impossible to ascertain the measure of just reparation, the injury is irreparable in a legal sense, so that an injunction will be granted to prevent such an injury. To render an injury irreparable it is not necessary that the pecuniary damage be shown to be great, but, on the contrary, the fact that in an action at law the jury could award only nominal damages often furnishes the very best reason for interference by a court of equity by injunction.

*Pitts v. Carothers,* 152 Miss. 694, 120 So. 830, 832 (1929).