Bill KEELON, Plaintiff,

v.

Don DAVIS, d/b/a Davis Auto Parts, et al., Defendants.

No. WC 79-6-S-P.

United States District Court, N. D. Mississippi, W. D.

March 29, 1979.

Robert T. Cornelius, Ford, McMillin & Cornelius, New Albany, Miss., for plaintiff.

Peter M. Stockett, Asst. Atty. Gen., State of Miss., Jackson, Miss., Peggy A. Jones, Warren & Jones, Holly Springs, Miss., for J. M. Ash.

Eugene D. Brown, Jr., Fant, Crutcher, Moore & Spencer, Holly Springs, Miss., for Don Davis and Kenneth Smith.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

Plaintiff Bill Keelon (hereafter "Keelon") is a resident citizen of the State of Alabama. Keelon is the owner of a tractor-trailer rig (hereafter "rig"). The rig was

involved in an accident on U.S. Highway 78 in Marshall County, Mississippi, on May 23, 1978.

Defendant Don Davis (hereafter "Davis"), is a resident citizen of Mississippi, and, on the date aforesaid, owned and operated a wrecker service in Marshall County, Mississippi.

In the early morning hours of the date aforesaid, a highway patrolman called Davis, informed him of the accident and requested emergency wrecker service to remove the wrecked rig and to free the driver of the rig, who was trapped inside the tractor.

Davis, upon reaching the scene of the accident with two large and one small wrecker, proceeded to free the trapped driver and tow the rig from the field where it had come to rest after the accident, to his place of business in Marshall County.

Keelon arrived at Davis' place of business on the date of the accident, after Davis had performed the work necessary to free the driver and tow the wrecked rig to his place of business. Davis was unable at that time to give Keelon a bill for his service. The matter remained unsettled until August 4th or 5th, 1978, when an associate of Keelon came by·Davis' place of business and secured a bill for the work.

Davis heard nothing further from Keelon until suit for conversion of the rig, valued at $10,000, was brought against him in the Circuit Court of Marshall County on August 18, 1978.

Davis answered the suit and filed a counterclaim by which he sought to recover the charges made in connection with the wrecker service, towage and storage of the rig. The total amount of Davis' claim, at that time, was $1,901.52. Davis claimed to have a common law lien on the rig to secure payment of the charges. This suit is now pending and has not been tried in the state court.

Keelon filed an action in replevin for the possession of the rig in the Circuit Court of Marshall County, Mississippi, on November 27, 1978. Davis filed an answer to the Declaration in Replevin and a Counterclaim in Recoupment, seeking to retain possession of the rig until his charges had been paid. The demand had increased an account of storage charges to $2,199.72. Keelon filed a motion to strike Davis' counterclaim contending that the replevin action was purely possessory in nature based upon a tortious withholding of the rig and that the counterclaim was not based on the alleged tortious withholding of which complaint was made in the Declaration in Replevin.

The replevin action was tried to the court, the parties having waived a jury trial. The presiding judge entered an order on December 6, 1978, granting Keelon immediate possession of the rig, which was then situated at Davis' place of business. The Davis' counterclaim was dismissed without prejudice.

Before Keelon recovered possession of the rig, and on the same day upon which his right of possession was recognized by the Circuit Court of Marshall County, i. e. December 6, 1978, and while the rig remained at Davis' place of business, Davis filed, in the Marshall County Chancery Court, a "Bill of Complaint and For a Writ of Sequestration".

Davis alleged in the chancery suit that Keelon was indebted to him in the sum of $2,197.00 in connection with the wrecker service, towage and storage of the rig; that Keelon had been granted the writ of replevin in the Circuit Court suit which entitled Keelon to immediate possession of the rig, and that he believed Keelon intended to remove the rig from the State of Mississippi and from the jurisdiction of the Chancery Court. The Bill of Complaint was sworn to by Davis' attorney who made affidavit to the truthfulness of the facts and statements set forth therein and that the relief sought was just and should be granted.

Davis tendered to the clerk of the chancery court a bond for attachment in the penal sum of $20,000 (twice the asserted value of the rig) conditioned to pay Keelon such damages as he might sustain by the wrongful suing out of the Writ of Sequestration for the enforcement of the debt, etc.

A Writ of Sequestration for the rig was sought in Davis' Bill of Complaint.

The bond was approved by a deputy clerk of the chancery court on December 6, 1978. The writ was immediately issued commanding the sheriff of the county to seize the rig and hold the same according to law. The writ commanded the sheriff to summon Keelon to appear before the chancery court on the 4th Monday of January, 1979, to answer the action.

Pursuant to the command of the writ, the sheriff seized the rig at Davis' place of business by posting a notice of levy thereon. Personal service on Keelon could not be obtained and substituted process by publication of summons was made for him according to Mississippi law.

At the January, 1979, term of the Marshall County Chancery Court on January 22, 1979, Keelon filed a Demurrer to the Bill of Complaint. The principal ground of the demurrer was that "Article 11, Chapter 29 of the Statutes of the State of Mississippi, the laws in which a Writ of Sequestration is brought, has been ruled unconstitutional because it deprives the defendant of rights, privileges and immunities secured to him under the Fifth and Fourteenth Amendments to the United States Constitution which guarantees against the deprivation of private property without due process of law".

In addition to the demurrer, on January 22, 1979, Keelon filed a written motion for 30 additional days within which to plead.

The Chancellor of the court handed down two orders on January 29, 1979. One order overruled the demurrer, the other granted the motion for additional time within which to plead.

Keelon filed the complaint in the action sub judice on January 22, 1979, seeking to restrain the enforcement of the writ of sequestration against the rig, and seeking its release. The complaint is based upon the contention that the sequestration statutes of the state [1] are unconstitutional in that they deprive him of his property without due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States. The defendants are Davis, J. M. Ash, Clerk of the Marshall County Chancery Court, and Kenneth Smith, Sheriff of Marshall County.

The Attachment in Chancery Statutes, Miss.Code Ann. § 11–31–1, et seq. (1972) provide for attachment suits against any

---

1. The statutes included in Chapter 29 of Title 11, Mississippi Code, Annotated, pertinent to the action sub judice are:

§ 11–29–1. Issuance of writ of sequestration.

When a bill is filed in the chancery court in reference to personal property, and affidavit and bond as required therefor is made and filed, the clerk of the court shall issue a writ of sequestration.

§ 11–29–3. Affidavit required.

Before any writ of sequestration shall issue, the complainant shall make and file an affidavit showing that he has good cause to believe, and does believe, that there is danger of the removal of the property involved in the suit beyond the limits of the state, or of its concealment in the state so as to be beyond the process of the court, or of its transfer so as to defeat the rights of the complainant, and that such removal, concealment, or transfer is about to occur, and, moreover, shall give the bond required by section 11–29–5.

§ 11–29–5. Bond required of complainant.

Before the writ of sequestration shall issue in any case, the complainant shall enter into bond with sufficient sureties, payable to the defendant, in double the value of the property proposed to be seized, to be fixed by the clerk from affidavit, or such evidence as may satisfy him, conditioned to pay all damages which may accrue from the wrongful seizure of the property to be sequestered, which bond shall be filed in the cause.

§ 11–29–7. Chancellor or any judge may order the writ and fix amount of bond.

Writs of sequestration may also be ordered, and the amount of the bond to be given therefor by complainant may be prescribed, by the chancellor or by any judge authorized to grant remedial process of such nature.

The other statutes included in Chapter 29, not necessary to here quote verbatim, are § 11–29–9, which contains writ requirements, § 11–29–11, which contains provisions for bonding the property by complainant in certain cases and § 11–29–13, which contains provisions for handling the seized property, should the same not be bonded by either party.

nonresident, absent or absconding debtor (hereafter "nonresident"), who has lands and tenements within the State of Mississippi, or against any such person and persons in this state who have in their hands effects of, or are indebted to such nonresident.

The Attachment in Chancery Statutes have been declared violative of the Fourteenth Amendment to the Constitution of the United States for failure to afford due process to the persons whose property is levied upon under the statute, by Chief Judge William C. Keady of this court, *M. P. I., Inc. v. McCullough,* 463 F.Supp. 887 (N.D.Miss.1978), and Judge Walter Nixon of the Southern District, *Mississippi Chemical Corp. v. Chemical Construction Corp.,* 444 F.Supp. 925 (S.D.Miss.1977).

The case from the Southern District of Mississippi, *Mississippi Chemical Corp. v. Chemical Construction Corp.,* 444 F.Supp. 925 (S.D.Miss.1977), involved an action for damages brought by Mississippi Chemical against Chemical Construction, a non-resident of the state. The suit involves Mississippi's Attachment in Chancery Statutes, Title 11, Chapter 31, Miss.Code Ann. § 11–31–1, et seq. (1972).

By the simple expediency of filing an Original Bill in the Chancery Court against Chemical Construction, naming as defendants persons in this state who were alleged to be indebted to Chemical Construction, Mississippi Chemical was able to impound large indebtednesses owing by such persons to Chemical Construction. The debts were impounded by service of summons upon which was endorsed a statement as to the nature and object of the suit and that the suit was to subject the indebtedness of such person to the Chemical Construction to the demand of Mississippi Chemical, or, by attaching a copy of the Bill to the summons. Miss.Code Ann. § 11–31–3 (1972). Mississippi Chemical was not required to post bond of any sort. Chemical Construction could only free the debt, prior to trial, by giving security. Id. § 11–31–9.

After a full and lucid discussion of the pertinent case law, Magistrate Roper, whose recommendation was approved verbatim by Judge Nixon, stated:

Summarizing, this Court is of the opinion that the Mississippi attachment in chancery statutes are unconstitutional because they do not require the plaintiff to obtain any court ordered writ of sequestration or garnishment, the obligation of the attachment defendant to the non-resident principal defendant being bound by the service of process made at the sole instance and discretion of the plaintiff's attorney; no bond is required of the plaintiff nor is there any requirement that the plaintiff show, by affidavit or otherwise, that he is in any way entitled to the attachment; there is no review either prior to nor after service upon the attachment defendant of the propriety of the attachment by a disinterested, neutral judicial officer; the principal defendant can dissolve the attachment only by posting a satisfactory bond, and no procedure exists whereby the principal defendant can challenge the validity of the attachment on the grounds of procedural irregularity, excessiveness of the attachment, lack of merit of the underlying claim, or any other reason; only by prevailing at trial on the merits can the principal defendant obtain relief from the attached indebtedness; all debts owing to the principal defendant are subject to attachment regardless of where the debts arose, provided only that the attachment defendant be served within the State of Mississippi; and finally, the statutes do not require even a rudimentary *ex parte* hearing.

444 F.Supp. at 938.

Chief Judge Keady followed the reasoning advanced in *Mississippi Chemical* in reaching a decision in *M P I, Inc. v. Derwood McCullough, et al.,* 463 F.Supp. 887 (N.D.Miss.1978) that the Attachment in Chancery Statutes are unconstitutional.

In *M P I* the lands of the nonresident (M P I) were attached. This was done when the attaching party, after filing the Original Bill with the Clerk of the Chancery Court, caused the Sheriff of the county to

post a copy of the writ of attachment on the real property of M P I situated in the county.

In an able opinion, Judge Keady held the Mississippi Attachment in Chancery Statutes to be unconstitutional on their face and as applied. In doing so, he said:

We therefore hold that the chancery statute procedure as to the realty of a nonresident debtor (no less than the seizure of personalty) is violative of the Due Process Clause of the fourteenth amendment both facially (as the Mississippi statutes are presently written) and as applied to the facts of this particular case. Mindful that our ruling has significant implications to a heretofore largely unquestioned procedure, we limit the effect of our ruling today to the parties in the case at bar and to prospective enforcement of the attachment procedures at issue here. We take this course in order that the validity of all prior Mississippi real estate attachments, and titles derived thereunder, not be put in question.

Memorandum of Decision at page 28.

Keelon relies principally on *Mississippi Chemical* and *M P I, supra*, to support his contention that the Mississippi Sequestration Statutes are unconstitutional and that his property was seized without affording him the due process of law to which he is entitled under the Fourteenth Amendment.

The Attachment in Chancery Statutes and the Sequestration Statutes have certain distinguishing characteristics. The Attachment Statutes do not require that plaintiff shall claim a specific interest in the property against which the attachment is sought. The Sequestration Statutes require that the Bill must be "in reference to personal property," Section 11–29–1. The statute does not, however, require that plaintiff claim a vested interest in the property.

The Sequestration Statutes provide for the issuance of the writ only after the complaining party has filed with the clerk of the court an affidavit and bond. The affidavit must show the plaintiff has good cause to believe, and does believe, that there is danger of the removal of the property involved in the suit beyond the limits of the state, or of its concealment in the state so as to be beyond the process of the court, or of its transfer so as to defeat the rights of the plaintiff, and that such removal, concealment or transfer is about to occur. Section 11–29–3. The bond must be for double the value of the property proposed to be seized "to be fixed by the clerk from affidavit, or such evidence as may satisfy him, conditioned to pay all damages which may accrue from the wrongful seizure of the property to be sequestered." Section 11–29–5. The Attachment Statutes do not require such an affidavit or bond.

In the Sequestration Statutes, the Chancellor or any Judge may order the writ and fix the amount of the bond. Section 11–29–7. The Attachment Statutes do not expressly provide for such a procedure, although Mississippi has a statute applicable to all courts which provides for the issuance of remedial writs by Supreme and Circuit Judges and Chancellors, Section 9–1–19.

The *Mississippi Chemical* and *M P I* cases do not solve the problem in the action sub judice. To solve the issue, it is necessary to consider three recent Supreme Court cases. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, *reh. den.* 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972) (*"Fuentes"*), followed by *Mitchell v. W. T. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (hereafter *"Mitchell"*), and finally by *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (hereafter *"Di-Chem"*).

*Fuentes* involved the constitutionality of Florida and Pennsylvania laws authorizing the summary seizure of goods and chattels in a person's possession under a writ of attachment. Mrs. Fuentes, a Florida resident, purchased a gas stove and stereophonic phonograph from the Firestone Tire and Rubber Co. (hereafter "Firestone"). She executed a contract evidencing the purchase price of the goods. Firestone retained title in the goods to secure payment of the pur-

chase price, but Mrs. Fuentes was entitled to the possession thereof unless and until she should default on her installment payments. After making payments on the contract for about a year, a dispute arose over the servicing of the stove. Firestone instituted an action in the small-claims court for repossession of the goods, claiming that Mrs. Fuentes refused to make her remaining payments. Simultaneously with the filing of that action and before Mrs. Fuentes received a summons to answer its complaint, Firestone obtained a writ of replevin ordering a sheriff to seize the goods at once. The Florida statute provided for the issuance of the writ ordering state agents to seize the goods upon the ex parte application of Firestone and the posting of a security bond. The statute did not provide for notice to Mrs. Fuentes nor provide an opportunity for her to challenge the seizure at any kind of prior hearing.

The Pennsylvania statutes were involved in the companion case, *Parham, et al. v. Americo Cortese, et al.* (No–70–5138). Like Mrs. Fuentes, the *Parham* plaintiffs had possessions seized under writs of replevin. The procedure followed to replevy the goods in the Pennsylvania case was similar to the procedure in the Florida case.

The Supreme Court posed the question presented as "whether these statutory procedures violate the Fourteenth Amendment's guarantee that no State shall deprive any person of property without due process of law," 407 U.S. at 70, 72 S.Ct. at 1989.

In *Fuentes*, the Supreme Court said:

> For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." . . . It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner."

407 U.S. at 80, 92 S.Ct. at 1994 (Citations omitted)

The Supreme Court upheld the constitutionality of the Louisiana replevin statutes in *Mitchell*. There, as in *Fuentes*, the goods replevied were household items. Also, as in *Fuentes*, the seller was required to give bond for the buyer's protection and the writ issued without notice to the buyer and without a hearing. Unlike *Fuentes* the complaint was accompanied by an affidavit as to its truthfulness and contained the assertion that the seller had reason to believe that the buyer would encumber, alienate, or otherwise dispose of the goods during the pendency of the proceedings.

The factual circumstances in *Mitchell* reflect that upon the filing of the complaint, supported by the statutory affidavit and bond, the Judge of the Louisiana court, ordered the writ to issue without prior notice to Mitchell or affording him opportunity for hearing; along with the writ Mitchell was served with a citation, directing him to file a pleading or make appearance in the issuing court within five days. Mitchell appeared and filed a motion to dissolve the sequestration writ. Upon a trial, the court refused to dissolve the attachment, and held that " 'plaintiff insured defendant's right to due process by proceeding in accordance with Louisiana Law as opposed to any type of self-help seizure which would have denied defendant possession of his property without due process' ". 416 U.S. 603, 94 S.Ct. 1898. The Louisiana Supreme Court and the United States Supreme Court affirmed the decision of the trial court.

The *Mitchell* court placed special emphasis on the interest of the parties in the property. Mitchell was a conditional buyer. Grant was a conditional seller. Both parties had a fixed interest in the property until the purchase price had been paid, Grant reserving title thereto until such was done. On this feature of the case, the court said:

> Plainly enough, this is not a case where the property sequestered by the court is exclusively the property of the defendant debtor. The question is not whether a debtor's property may be seized by his creditors, pendente lite, where they hold

no present interest in the property sought to be seized. The reality is that both seller and buyer had current, real interests in the property, and the definition of property rights is a matter of state law. Resolution of the due process question must take account not only of the interests of the buyer of the property but those of the seller as well.

.    .    .    .    .

The writ is obtainable on the creditor's ex parte application, without notice to the debtor or opportunity for a hearing, but the statute entitles the debtor immediately to seek dissolution of the writ, which must be ordered unless the creditor "proves the grounds upon which the writ was issued," Art. 3506, the existence of the debt, lien, and delinquency, failing which the court may order return of the property and assess damages in favor of the debtor, including attorney's fees.

416 U.S. at 604, 606, 74 S.Ct. at 1898, 1899 (footnote omitted)

The statute involved in *Mitchell* authorized the issuance of the writ only where " 'one claims the ownership or right to possession of the property, or a mortgage, lien, or privilege thereon   .    .    . if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action' Art. 3571." 416 U.S. at 605, 94 S.Ct. at 1899.

In commenting on the issuance of the writ under the Louisiana statute, the court said:

The writ, however, will not issue on the conclusory allegation of ownership or possessory rights. Article 3501 provides that the writ of sequestration shall issue "only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts" shown by a verified petition or affidavit. In the parish where this case arose, the clear showing required must be made to a

judge, and the writ will issue only upon his authorization and only after the creditor seeking the writ has filed a sufficient bond to protect the vendee against all damages in the event the sequestration is shown to have been improvident. Arts. 3501 and 3574.

The writ is obtainable on the creditor's ex parte application, without notice to the debtor or opportunity for a hearing, but the statute entitles the debtor immediately to seek dissolution of the writ, which must be ordered unless the creditor "proves the grounds upon which the writ was issued," Art. 3506, the existence of the debt, lien, and delinquency, failing which the court may order return of the property and assess damages in favor of the debtor, including attorney's fees.

The debtor, with or without moving to dissolve the sequestration, may also regain possession by filing his own bond to protect the creditor against interim damage to him should he ultimately win his case and have judgment against the debtor for the unpaid balance of the purchase price which was the object of the suit and of the sequestration. Arts. 3507 and 3508.

416 U.S. at 605–07, 94 S.Ct. at 1899–1900. (footnotes omitted)

It is at once apparent that *Mitchell* does *not control the action sub judice.* Here, Davis has no present interest in the rig. The Louisiana statute requires a present vested interest in the property sequestered. The Louisiana writ will not issue on the conclusory allegation of ownership or property rights. Here, the Original Bill, under the oath of Davis' attorney, recites the issuance of the writ of replevin in the Circuit Court suit, the possession of the rig awarded Keelon therein and alleges that Davis believes that Keelon will remove the rig from the state, and thereby place it beyond the jurisdiction of the court.

Although the Louisiana statutes provide for the issuance of the writ on the creditor's ex parte application, without notice to the

debtor or opportunity for a hearing,[2] they establish the right of the debtor immediately to seek dissolution of the writ, which must be ordered unless the creditor proves the grounds upon which the writ was issued and the existence of the debt, lien, or delinquency. The Mississippi statutes do not afford Keelon the right to an immediate hearing where Davis would bear the burden of establishing the right to have the writ issued. Here, also, Davis has no lien on the rig, though he asserts a delinquent debt in regard thereto.

In the opinion of the court, the Louisiana statutes would not authorize the issuance of a writ of sequestration given the facts herein involved. The action sub judice is clearly distinguishable from *Mitchell*.

Finally, the Supreme Court in *Di-Chem* held a Georgia garnishment procedure to be violative of the due process clause of the Fourteenth Amendment. The statute provided for the issuance of a writ of garnishment upon the plaintiff or his attorney making an affidavit before " 'some officer authorized to issue an attachment, or the clerk of any court of record in which the said garnishment is being filed or in which the main case is filed, stating the amount claimed to be due in such action  .  .  . and that he has reason to apprehend the loss of the same or some part thereof unless process of garnishment shall issue.' " 419 U.S. 602–3, 95 S.Ct. 721. To protect the defendant against loss or damage in the event plaintiff fails to recover, plaintiff is required to file a bond in a sum double the amount sworn to be due. The defendant may dissolve the garnishment "by filing a bond 'conditioned for the payment of any judgment that shall be rendered on said garnishment.' " 419 U.S. 603, 95 S.Ct. 721. The Supreme Court was presented with the issue of whether these provisions of the Georgia statute satisfy the Due Process

Clause of the Fourteenth Amendment. The court held that this statute did not do so.

The *Di-Chem* court held the Georgia statute to be violative of the Due Process Clause for the same reason advanced by the court in *Fuentes.* The court said:

The Georgia statute is vulnerable for the same reasons. Here, a bank account, surely a form of property, was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt, all by a writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer.

Nor is the statute saved by the more recent decision in *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). That case upheld the Louisiana sequestration statute which permitted the seller-creditor holding a vendor's lien to secure a writ of sequestration and, having filed a bond, to cause the sheriff to take possession of the property at issue. The writ, however, was issuable only by a judge upon the filing of an affidavit going beyond mere conclusory allegations and clearly setting out the facts entitling the creditor to sequestration. The Louisiana law also expressly entitled the debtor to an immediate hearing after seizure and to dissolution of the writ absent proof by the creditor of the grounds on which the writ was issued. 419 U.S. at 606–07, 95 S.Ct. at 722.

The court has concluded that the facts which exist in the action sub judice bring it within the holding of the Supreme Court in *Di-Chem.* To paraphrase the holding of that case, the Mississippi statutes are vulnerable for the same reason set forth in *Fuentes.* Here, a rig, surely a form of property, was impounded and absent a bond, put totally beyond use during the

---

**2.** The Louisiana statutes provide generally, that the court clerk may issue writs of sequestration. But one of the statutes confines the authority to the judge in Orleans Parish, the parish in which this case originated. The Supreme Court was careful to point out the validity of procedures in areas outside Orleans Parish was

not at issue in the case. Footnote 5, 416 U.S. at 606, 94 S.Ct. 1895. The action sub judice is distinguished from *Mitchell* for the additional reasons that *Mitchell* requires judicial supervision of the issuance of the writ—the action sub judice does not.

pendency of the litigation on the alleged debt, all by a writ of sequestration issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer. 419 U.S. at 606, 95 S.Ct. 601.

Because the action sub judice brings into question the constitutionality of the Mississippi Sequestration Statutes of general use in the state, the Attorney General of Mississippi appeared by a deputy at oral argument and submitted a Memorandum in support of defendants' position that the statutes are constitutional and that the court should sustain this position.

The Attorney General recognizes the importance of the trilogy of Supreme Court cases, *supra*. He calls the court's attention to an exception to the rule announced in *Fuentes*. Defendants also cite and argue that it is here applicable. In *Fuentes* the court said:

> There are "extraordinary situations" that justify postponing notice and opportunity for a hearing. . . . These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

407 U.S. at 90–91, 92 S.Ct. at 2000. (footnotes omitted).

In urging that the exception in *Fuentes* should be applied in the action sub judice the argument is made, not only by the Attorney General but also by defendants, that there is a general public interest in assuring that residents of Mississippi are given some protection in asserting their claims against nonresident debtors by preventing the removal from the State of property belonging to such nonresident debtor, resulting in resident-creditors being completely unable to recover their claims from the non-resident debtor. Additionally, the argument is made that there is a necessity for prompt action, as any delay will result in the removal of the property from the jurisdiction of the court. The third argument is made that of the general statutory provisions, relating to the operation of the Chancery Courts of the State, give a nonresident debtor the right to prompt judicial review.[3]

The *Fuentes* decision makes it clear that the exception to the general rule relates only to a "truly unusual" situation and that the court has allowed outright seizure without opportunity for a prior hearing "only in a few limited situations", 407 U.S. at 90, 92 S.Ct. at 1999. In citing examples of situations in which the court had allowed summary seizure of property without notice and prior hearing, reference was made to "summary seizure of property to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food". 407 U.S. at 91–92, 92 S.Ct. 1983, 2000 (footnotes omitted).

There, the *Fuentes* court, commenting on the state statutes under consideration, said:

> The statutes, moreover, abdicate effective state control over state power. Private parties, serving their own private advantage, may unilaterally invoke state power to replevy goods from another. No state official participates in the decision to seek a writ; no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff

3. These statutes are cited in the Attorney General's memorandum. Miss.Code Ann. §§ 9–1–29, 9–5–91 and 9–5–147 (Cum.Supp.1978).

provide any information to the court on these matters. The State acts largely in the dark.

407 U.S. at 93, 92 S.Ct. at 2001. (footnote omitted).

The court does not find impressive the argument that the peculiar facts of the action sub judice bring it within the exception to the general rule that Keelon was entitled to notice and the opportunity of a prompt hearing before a judicial officer before the issuance of the writ; or, at the very least, a hearing promptly after seizure where Davis would carry the burden of sustaining his right to seizure.

For the foregoing reasons, the court finds that the procedure. established in the Sequestration Statutes violates the Due Process Clause of the Fourteenth Amendment both facially and as applied to the facts of the case.

■ The court finds that Keelon has carried the burden of showing that he is entitled to the issuance of a preliminary injunction. The record reflects that there is a substantial likelihood that (1) Keelon will eventually prevail on the merits—that is on the issue that the Mississippi Sequestration Statutes violate the Fourteenth Amendment to the Constitution of the United States; (2) that he will suffer irreparable injury unless the injunction is issued, —the loss of the use of his rig during the pendency of the litigation; (3) that the threatened injury outweighs whatever damage the proposed injunction may cause to be suffered by defendant Davis—there is no suggestion that Keelon is insolvent, or that he could not be made to respond to any judgment Davis might obtain on the alleged indebtedness; and (4) that the injunction would not be adverse to public interest— only private interests are involved. *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

Let the preliminary injunction issue as prayed for in the complaint. Counsel for plaintiff will forthwith submit an appropriate order for entry by the court. The injunction shall issue upon Keelon entering into and filing with the clerk, an injunction bond in the sum of $2,500, conditioned for the payment of all costs and damages as may be incurred or suffered by any party wrongfully enjoined or restrained.