**WINKLE PONTIAC MOTORSPORTS, INC., Plaintiff,**

v.

**Morgan SHEPHERD, Defendant.**

**No. 1:88–CV–571–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 20, 1988.

Noland C. Leake, J. Robert Williamson, King & Spalding, Atlanta, Ga., for plaintiff.

C. Gary Triggs, Morganton, N.C., Frank Andrews Lightmas, Jr., Atlanta, Ga., for defendant.

### ORDER

ROBERT H. HALL, District Judge.

This action is currently before the court on plaintiff's motion for a preliminary injunction. Federal jurisdiction is predicated on 28 U.S.C. § 1332. For the reasons stated below, the court DENIES plaintiff's motion for a preliminary injunction.

FACTS

Plaintiff Winkle Pontiac Motorsports, Inc. (Winkle) is a corporation organized and existing under the laws of the state of Ohio. Winkle's principal place of business is in Paulding, Ohio. First Amended Complaint ¶ 1. Part of Winkle's business involves the building and racing of NASCAR Winston Cup and Busch Gran National stock cars. *Id.*

Defendant Morgan Shepherd resides in Conover, North Carolina and is a professional stock car driver. *Id.*, ¶¶ 2, 5.

In mid-November 1987, Winkle and Shepherd first met to discuss a contract under which Shepherd would become Winkle's driver. *Id.* ¶ 6. The parties signed and entered into the contract on November 21, 1987. *Id.* Pursuant to this contract, Mor-

gan Shepherd drove for Winkle in several races between early February and early March of 1988. *Id.*

In early March, 1988, the parties became involved in a dispute concerning whether Shepherd would continue to drive for Winkle. *Id.*, ¶ 10. Shortly thereafter, Shepherd retained an attorney who advised Winkle by letter dated March 11, 1988 that Shepherd had withdrawn from his contract with Winkle. *Id.*, ¶ 14.

Plaintiff first brought this action before the court on March 18, 1988, seeking a temporary restraining order to enjoin Shepherd from driving any vehicle for anyone other than plaintiff in Winston Cup or Busch Gran National races until November 21, 1989. Winkle also sought to prevent Shepherd from driving any Winkle owned vehicle in the Motorcraft 500 race to be run at the Atlanta International Raceway on March 20, 1988. The court denied plaintiff's motion for a TRO, finding that plaintiff did not sufficiently carry its burden of establishing a likelihood of success on the merits in either the contract or the conversion claim.

On May 9, 1988 plaintiff filed its First Amended Complaint. Between March and September of 1988, the parties conducted discovery. On September 15, 1988 plaintiff moved for a preliminary injunction on the conversion count. Defendant thereafter moved to consolidate the application for preliminary injunction with the trial on the merits, pursuant to Fed.R.Civ.P. 65(a)(2). The court granted defendant's motion to consolidate with respect to the conversion claim. On October 11, 198 the court held a hearing on plaintiff's motion for preliminary injunction.

DISCUSSION

Plaintiff's objectives in seeking an injunction are: 1) to enjoin defendant from using an any manner whatsoever sixteen race car wheels and Winkle # 2.[1] Plaintiff claims that defendant converted both the wheels and the race car; 2) to enjoin defendant from altering, damaging or failing to replace any parts on the vehicle; and 3) to enjoin defendant from preventing Winkle from repossessing immediately the race car and the wheels.

The granting or denying of a preliminary injunction rests within the sound discretion of the district court. *Cunningham v. Adams,* 808 F.2d 815, 819 (11th Cir.1987). The district court must exercise its discretion in light of the four well established prerequisites for issuance of a preliminary injunction: 1) a substantial likelihood that movant will ultimately prevail on the merits; 2) a showing that movant will suffer irreparable injury unless the injunction issues; 3) proof that the threatened injury to movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) a showing that the injunction, if issued, would not be adverse to the public interest. *Id.* The burden of proof on each of these four elements rests with the movant. *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir. 1983).

I. *Likelihood of Success on the Merits*

The first element a movant must establish before the court can issue a preliminary injunction is that movant has a substantial likelihood of success on the merits. *Callaway v. Block,* 763 F.2d 1283 (11th Cir.1985). Winkle must therefore demonstrate that it has a substantial likelihood of proving that the defendant converted Winkle # 2.

Under Georgia law, a conversion is the unauthorized assumption and exercise of a right of ownership over personal property belonging to another which is contrary to the owner's right. *Swish Mfg. Southeast v. Manhattan Fire and Marine Ins. Co.,* 675 F.2d 1218 (11th Cir.1982). Thus, to succeed on the merits, Winkle must prove 1) that it is the rightful owner of Winkle # 2; and 2) that Shepherd, without authority, exercised dominion over Winkle # 2. While there is much confusion over the

---

**1.** By designating the car in dispute "Winkle # 2," the court is not expressing any opinion as to the ownership of the car; rather, the court is adopting the terminology invoked by the plaintiff merely for convenience and consistency.

ownership of Winkle # 2, the following facts are clear:

1. A surface plate car consists only of the chassis, the interior sheet metal, the floor pan, the two rear quarter panels and a roof. It does not have an engine, a transmission or a drive train.

2. A surface plate car is valued at approximately $14,000.

3. A finished race car is valued at approximately $50,000.

4. In late November of early December of 1987, Shepherd, in his capacity as driver for Winkle Pontiac Motorsports, ordered several surface plate cars from Mike Laughlin, owner of Laughlin Race Products.

5. In early December, after receiving an $8,000 deposit from Winkle, Laughlin began work on Winkle # 1. Winkle # 1 was completed around December 15, 1988 and paid for in full by Winkle. Winkle # 1 was subsequently taken to Gee's Body Shop, where it was painted in Winkle's red, white and blue color scheme. Winkle also paid for the body work done by Gee.

6. Around December 16, 1988, Laughlin rolled the $8,000 deposit from Winkle # 1 over, and began work on Winkle # 2. Winkle # 2 was completed around January 21, 1988. Winkle # 2 was also sent to Gee's body shop. Gee first painted Winkle # 2 red, white and blue—but in a different scheme than the Winkle # 1 design. Morgan Shepherd paid Gee $9,000 in cash for the body work done on Winkle # 2. On March 15, 1988, Shepherd paid Gee to paint Winkle # 2 black and silver.

7. Shepherd is now in possession of Winkle # 2.

The essence of the conversion claim is that Shepherd took Winkle # 2, after Winkle had paid for the car at least through the surface plate stage. The trial testimony and the parties' briefs indicate that there is much debate concerning the ownership of Winkle # 2. However, the court finds after reviewing the testimony and the briefs that there is a substantial likelihood that Winkle could prevail on the merits of the conversion claim.

It is undisputed that Winkle paid the $8,000 deposit on the car finished around January 25, 1988. It is also clear that Winkle gave Mike Laughlin a check for $13,165.99, dated January 25, 1988. Plaintiff's Preliminary Injunction Exhibit # 3. Laughlin cashed the check on February 3, 1988. Shepherd also gave *Laughlin* a check dated January 25, 1988 for $13,-165.99. However, Shepherd's check was not cashed until February 26, 1988. Laughlin Affidavit, p. 44. Laughlin finished a third surface plate car around the end of February or the beginning of March. Laughlin Affidavit, p.p. 50–52. Plaintiff contends, and the evidence indicates that Shepherd's check for $13,165.99 was actually offered for payment of the car finished towards the end of February, and not for Winkle # 2, which was finished around January 25, 1988. While withholding any ruling at this time on the conversion claim, the court believes that plaintiff has demonstrated a substantial likelihood of success on the merits of this claim.

## II. *Irreparable Injury*

At the conclusion of the hearing on plaintiff's motion for a Preliminary Injunction, this court expressed concern that the parties had not satisfactorily addressed the issue of irreparable harm. Thus, the court requested supplemental briefing on this issue. After careful evaluation of depositions, testimony from the hearing, and the parties' briefs, the court finds that plaintiff has not met its burden of proving irreparable injury.

Plaintiff rightly points out in its supplemental brief that the quantum of evidence necessary to carry the burden can fluctuate from element to element. Supplemental Brief, p. 1. Thus, if a movant makes an extremely strong showing on one element, the showing on another element need not be so strong. *Wesley–Jessen, Inc. v. Armento*, 519 F.Supp. 1352, 1355 (N.D.Ga. 1981) (Hall, J.). However, this court has consistently held, in line with all Eleventh Circuit rulings, that the plaintiff must

clearly establish all four elements at a basic level before the court will apply the "sliding-scale" analysis. Thus, no matter how strong a movant's showing of likelihood of success on the merits, if movant fails to satisfy its burden of proof on irreparable injury the court should not grant the injunction. If plaintiff Winkle cannot meet the burden on one element, it will not help its case that it has a tremendous showing on all the other elements. *See, Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983), *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352 (11th Cir.1983).

An injury is irreparable for purposes of a preliminary injunction only if it cannot be undone by monetary relief. *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir.1983). As the Supreme Court stated in *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974), quoting *Virginia Petroleum Jobbers Assn. v. FPC*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958):

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

In the case at hand, if plaintiff were to prevail on the merits, money damages would be available to compensate plaintiff for the cost of replacing Winkle # 2 or that part of Winkle # 2 found to belong to plaintiff. Both a racing car and race car wheels are fungible items. Money damages would therefore enable the plaintiff to purchase replacements. The conversion of admittedly fungible items will not result in irreparable injury to the plaintiff if money damages are available and will enable plaintiff to satisfactorily replace the converted items. The only issue, therefore, is whether plaintiff is irreparably injured by having to compete with one less car than expected.

Plaintiff Winkle asserts that it will suffer irreparable injury if the court does not order Shepherd to turn Winkle # 2 over to plaintiff immediately. First, Winkle alleges that it faces many problems at each race because it is without one of the race cars it orignally planned to have in its rotation. Kesler Affidavit, ¶¶ 5–11. Next, Winkle claims that the lack of a back-up car resulted in Winkles' failure to qualify at the Riverside race on June 12, 1988 and at the North Carolina race three weeks ago. Winkle asserts that it will likely find it difficult to qualify for the remaining three races on the NASCAR Winston Cup circuit because it is missing Winkle # 2. Plaintiff asserts that the absence of Winkle # 2 forces plaintiff to race more conservatively in the trials; thus plaintiff is less likely to qualify for the main event. Finally, Winkle asserts that without Winkle # 2 in its race rotation, the Winkle team has had to field cars at the last minute without advance preparation. Plaintiff's Reply Brief, p.p. 6–7.

It is difficult for the court to understand how plaintiff is irreparably harmed merely because it is forced to drive more conservatively during the remaining three races of the 1988 season. The court does not feel that this assertion alone constitutes irreparable injury. Furthermore, it seems incredible that plaintiff has taken no action since March 18 to secure for itself an additional car which would have alleviated the alleged difficulties facing the plaintiff. If an extra car were so fundamentally important that Winkle believed it would suffer irreparable harm without it, surely Winkle would have ordered another surface plate car or even purchased a race-ready car soon after the TRO hearing.[2] Plaintiff's failure to mitigate its situation by securing for itself an additional car does not negate the possibility that plaintiff could prove irreparable injury, but it does tend to suggest a lack of urgency on plaintiff's part.

---

**2.** The court accepts plaintiff's argument that drivers prefer custom made cars as opposed to race-ready vehicles. However, it seems that had Winkle purchased one race-ready car, thus adding another vehicle to its rotation, Winkle could have alleviated some of the difficulties it faced in preparing its custom made cars for racing.

Besides making bare assertions, plaintiff has given this court little evidence or authority for finding that conversion, under the circumstances of this case, constitutes irreparable harm. Plaintiff's best case on this point is *Keelon v. Davis*, 475 F.Supp. 204, 213 (N.D.Miss.1979). *Keelon* held that the sequestration of plaintiff's rig pursuant to a Mississippi statute would result in irreparable injury to plaintiff, particularly when the sequestration statute would probably be found to violate the Due Process Clause of the Fourteenth Amendment. *Id. Keelon* is not binding on this court. Furthermore, *Keelon* contains no analysis as to why deprivation of the tractor-trailer rig constituted irreparable injury to the plaintiff. The case is therefore of little use to this court in determining whether plaintiff had met its burden of proving irreparable injury.

Plaintiff additionally argues that possession of converted property by a thief is a continuing wrong. Thus, plaintiff argues, it is suffering a continuing wrong while defendant Shepherd retains possession of Winkle # 2. The court does not dispute that conversion is a wrong, and that the true owner of property is injured by deprivation of it. However, a preliminary injunction is not the appropriate mechanism for remedying conversion unless the plaintiff carries its burden of proving irreparable injury. Plaintiff has not met this burden.

### III. *Balancing of Hardships*

It is unlikely that Winkle will suffer great hardship between now and the end of the 1988 racing season if the court fails to grant the preliminary injunction. Winkle's Director of Motorsports, Nick Kessler admitted at the October 11, 1988 hearing that Winkle currently has four completed race cars in its possession, two of which are ready to race. Granting Winkle's motion will not preserve the status quo between the parties, because Shepherd will be prevented from racing in the remaining races. Thus, the balancing of hardships does not tip the scale in favor of Winkle in this case.

### IV. *Public Interest*

The public interest in enforcing state conversion laws is strong. However, the plaintiff cannot rely on an equitable remedy when he is provided adequate protection under the already existing state laws. Because the public interest in preventing conversion can be adequately protected through already existing legal remedies, the court does not weigh the public interest criterion into its determination of whether a preliminary injunction should issue in this case.

### SUMMARY

A preliminary injunction is a drastic remedy, one that courts should not grant lightly. Finding that plaintiff has failed to carry its burden of proof as to irreparable injury, the court DENIES plaintiff's motion for a preliminary injunction.

SO ORDERED.